**Moses K. MURRAY, Petitioner-Appellant,**

v.

**Louie L. WAINWRIGHT, Director, Division of Corrections, State of Florida, Respondent-Appellee.**

**No. 29715.**

United States Court of Appeals, Fifth Circuit.

Oct. 28, 1971.

William G. Earle (Court-appointed), Kelly, Black, Black & Kenny, Miami, Fla., for petitioner-appellant.

Earl Faircloth, Atty. Gen., Tallahassee, Fla., Melvin Grossman, Asst. Atty. Gen., Miami, Fla., for respondent-appellee.

Before JOHN R. BROWN, Chief Judge, and PHILLIPS * and INGRAHAM, Circuit Judges.

INGRAHAM, Circuit Judge:

Moses K. Murray was, until the time of his release on April 1, 1971, a prisoner held by the State of Florida pursuant to two felony convictions for armed robbery. Having exhausted his State remedies, he sought habeas corpus relief from the Federal district court. The district court after a remand by this court in Murray v. Florida, 410 F.2d 393 (5th Cir., 1969), held an evidentiary hearing into the merits of some nine asserted infirmities of the two convictions. The district court found that Murray had been tried in a criminal court of record in September of 1953 and March of 1959 on two separate informations, each charging him with a separate episode of armed robbery. Both informations were filed in February of 1953. The court further found that none of Murray's contentions were valid. It therefore denied habeas corpus relief. This appeal followed.

For convenience of discussion we will separate consideration of the two convictions. The September 1953 conviction resulted from an information filed on February 6, 1953. At that trial the State presented the eye witness testimony of the victims; Murray was convicted and sentenced to 20 years in the state penitentiary. The district court found no basis for habeas corpus relief on the record of this conviction. We agree and affirm.

The second information however, was not brought to trial until March 23, 1959, more than six years after the information was filed on February 12, 1953. Murray urged this to the district court as a substantial error inasmuch as the delay in prosecution was unexplained and he asserted unexplainable since he was incarcerated in the Florida State Penitentiary by virtue of the 1953 conviction and was therefore fully available to the State for prosecution.

The district court denied habeas corpus relief on the grounds that Murray had failed to meet the four-fold standard articulated by this court in United States v. Auerbach, 420 F.2d 921 (5th Cir. 1969).

Before we are able to reach the merits of Murray's appeal from that finding we are compelled to consider whether the appeal is moot as a consequence of Murray's unconditional release from custody in April of this year. It is undisputed that Murray filed his petition for writ of habeas corpus while in State custody, and after he had exhausted his State remedies. Ordinarily this is all that is required to invoke the jurisdiction of the district court and this court on appeal in habeas corpus proceedings. Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). However, Murray's is not the ordinary case. Rather it is the case of an appeal from a denial of habeas corpus to be decided after the petitioner has been released. In Carafas v. LaVallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968), the Supreme Court held that such proceedings are not necessarily moot. The issue of mootness turns in such cases upon the presence of the petitioner's

---

* Of the Tenth Circuit, sitting by designation.

continuing interest in the validity of the judgment of conviction which survives the satisfaction of the sentence imposed on him. "On account of these 'collateral consequences', the case is not moot." *Carafas, supra,* at 237, 88 S.Ct. at 1559. The collateral consequences which arise when one is convicted of *a* felony are not here present, Murray has already suffered those consequences as a result of his 1953 conviction. However, as the court noted in Sibron v. New York, 392 U.S. 40, 55–57, 88 S.Ct. 1889, 20 L.Ed. 2d 917 (1968), there is little or no relevance in the fact that appellant is a multiple offender. Collateral consequences of additonal prosecutions nevertheless remain.[1]

While such consequences may be speculative,[2] they are sufficient to allow this court to retain jurisdiction.

We turn to a discussion of appellant's claim that he was denied his constitutional right to a speedy trial. Such a discussion inexorably leads to our consideration of the Supreme Court's decisions in Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967); Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969); and Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970). We are also led to a consideration of this circuit's holding in United States v. Auerbach, *supra.* In *Auerbach* we stated:

"The factors to consider in determining whether a defendant has been deprived of his Sixth Amendment right to a speedy trial are: (1) the length of the delay (2) the reasons for the delay (3) the prejudice suf-

1. In *Carafas, supra,* 88 S.Ct. 1559 at note 8, the Supreme Court noticed that there were undoubtedly other collateral consequences, and we therefore feel obliged to notice that under F.S.A. § 775.9 and § 775.10 Murray faces collateral consequences of his 1959 conviction in the form of enhanced sentences should he be convicted of another felony. In such a proceeding we further note that procedurally Murray might be unable to assert that the 1959 conviction was, due to a six year delay in prosecution, constitutionally infirm. In State v. Davis, 203 So.2d 160 (Fla., 1967), a case considering the availability of a collateral attack on a record of a prior conviction, the Supreme Court of Florida stated:

> "In a true recidivist situation we have held that the state must establish that the accused was previously adjudged guilty of a felony by a court of competent jurisdiction. Shargaa v. State, 102 So.2d 809 (Fla.1958). Ordinarily, also, the record of the court of prior conviction is sufficient, without more, to make a prima facie case on the point. *The prior judgment duly entered precludes any subsequent assault on its merits.*"

2. It is the nature of collateral consequences in the case of a multiple offender to be speculative. The Supreme Court in *Sibron,* 392 U.S. at 55, 88 S.Ct. at 1899, stated:

> "This case certainly meets that test for survival. Without pausing to can-

vass the possibilities in detail, we note that New York expressly provides by statute that Sibron's conviction may be used to impeach his character *should he choose to put it in issue at any future criminal trial,* N.Y.Code Crim. Proc. § 393-c, and that it must be submitted to a trial judge for his consideration in sentencing *should Sibron again be convicted* of a crime, N.Y. Code Crim.Proc. § 482. There are doubtless other collateral consequences." (Italics added).

In this regard compare United States, v. Morgan, 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954) and Fiswick v. United States, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196 (1946).

That Murray's collateral consequences are prospective and speculative does not make this any more an advisory opinion than that rendered in *Sibron.* We have before us, as there, a "fully developed record of testimony about contested historical facts, which reflects the 'impact of actuality' to a far greater degree than many controversies accepted for adjudication as a matter of course under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201." *Sibron, supra,* at 57, 88 S.Ct. at 1900.

We conclude that the standard of mootness in a criminal case is that it is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction. That is certainly not the case here.

fered by the defendant and (4) whether the defendant has waived his right."

Since *Auerbach* the Supreme Court has handed down its decision in *Dickey, supra*. We find that that decision requires no change in the factors to be considered in determining whether a defendant has been deprived of his Sixth Amendment right to a speedy trial. In Murray's case we will discuss those factors in the order of their relevance.

## A. WAIVER

■ It is beyond peradventure that a defendant may knowingly and voluntarily waive a constitutional right. The district court here found that appellant Murray had made no demand for trial before November 14, 1958. The court concluded that since the record contained no indication beyond appellant's assertions that demand had been made prior to 1958, Murray had not been denied a speedy trial. The court, moreover, noted that the demands which were filed failed to comport with the requirements of F.S.A. § 915.02.[3]

While the district court did not explicitly find that Murray had waived this fundamental constitutional right to a speedy trial, Klopfer v. North Carolina, *supra*, the court did state:

"While it is true that both the reason for and the extent of the trial delays are substantially unexplained,[4] [United States v. Auerbach, 420 F.2d 921 (5th Cir., 1969)], the record affirmatively indicates that petitioner

went to trial in 1959 without objection, notwithstanding his assertions later made and now renewed that he had been objecting to the delay since 1953."

From the record it appears undisputed that in Murray we have an inmate who was incarcerated for five years without the assistance of counsel, who has completed only the third grade, and who it is asserted has voluntarily surrendered his constitutional right to a speedy trial through a failure to diligently pursue that right. Such a notion cannot survive the scrutiny which an asserted waiver of a fundamental constitutional right must receive. Baker v. Wainwright, 422 F.2d 145 (5th Cir., 1970). As we said in *Auerbach*:

"The defendants' assertion that the failure to demand the right to a speedy trial should not constitute a waiver of that right is not to be lightly dismissed. A waiver of one's constitutional right cannot be inferred from a silent record, and the courts must indulge in every reasonable presumption against a waiver of a fundamental constitutional right. Johnson v. Zerbst, 1930, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. *See* Klopfer v. North Carolina, 1967, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1."

■ Giving Murray the benefit of every reasonable presumption against waiver, we conclude that he did not waive his right to a speedy trial by failing for five years to demand a trial nor did he waive his right by failing to com-

---

3. "A person serving a sentence of imprisonment in this state who has a criminal charge pending against him may file a written demand for trial in the court having jurisdiction within thirty (30) days before the first day of each of three (3) successive terms, and if he is not brought to trial before the end of the third term, he shall be discharged from the crime. A copy of each demand shall be served on the prosecuting attorney. A term of court during which a continuance has been granted to the defendant or the state shall not be counted in computing the three (3) terms. The provi-

sions of this section shall not apply to a person who has prevented the attendance of a witness at any of the three (3) terms." See also Cacciatore v. State, 226 So.2d 137 (Fla.App.1969).

4. We disagree. From the record delay is *totally* unexplained. Experientially, however, the reason for the State's delay appears plain. Untried, the remembrance of the 1953 information served to guarantee that Murray would be ineligible for parole on the 1953 conviction. See Detainers and the Correctional Process, 1966, Wash.U.L.Q. 417.

ply with F.S.A. § 915.02. Pitts v. North Carolina, 395 F.2d 182 (4th Cir., 1968). Compare United States v. Skinner, 308 F.Supp. 1221 (S.D.N.Y., 1969). Neither do we find a waiver because of the record's silence as to whether Murray's attorney raised an objection to the 1959 trial.[5]

The right to a speedy trial is not to be honored only for the vigilant and knowing. Hodges v. United States, 408 F.2d 543 (8th Cir. 1969).

## B. THE LENGTH AND REASON FOR THE DELAY

After more than six years from the initiation of the prosecution,[6] during which time the State of Florida at all times knew the whereabouts of its prisoner, Murray finally obtained the trial of the second of his two 1953 informations.

In the February 12, 1953 information it was charged that Murray had committed an armed robbery on the persons of Rose and Ben Nadel. By September 22, 1953, the State's attorney was aware[7] that Murray had been sentenced to twenty years at hard labor in the Florida State Penitentiary for the armed robbery of Mr. and Mrs. Grober (the February 6, 1953 information). While the record is silent on why the State deferred its prosecution, it is self-evident that Murray was in no way instrumental in causing that delay. The case therefore is fundamentally different from United States v. Auerbach, *supra*. *Auerbach* involved a Federal prosecution for mail fraud. The indictment was returned in Arizona, but trial was moved at defendant's request under F.R.Cr.P. 21(b) to the Southern District of Flori-

da. Subsequently, the Southern District of Florida retransferred the case to Arizona. Auerbach and his co-defendants contested this retransfer before the Fifth Circuit Court of Appeals and the United States Supreme Court. In desperation, after an attempt to have the Fifth Circuit issue a mandamus staying the retransfer had failed, the defendants in *Auerbach* convinced the district court in Arizona to return the case to Florida, where trial was finally had. These proceedings accounted for the great bulk of the almost five year delay in that case. In denying Auerbach's Sixth Amendment claim, the court concluded:

> "Having sought the aid of the judicial process and realizing the deliberateness that a court employs in reaching a decision, the defendants are not now able to criticize the very process which they so frequently called upon."

Thus, if the four factors to consider in determining whether a defendant had been deprived of his Sixth Amendment right to a speedy trial are conceptualized as if bridges which the appellant must cross, Auerbach's claim failed on the reasons for delay.

■ While the right to a speedy trial is of necessity relative and dependent upon the circumstances of every case, cf. Moser v. United States, 381 F.2d 363 (9th Cir., 1967), and while Murray had not been deprived of trial for as long as the prisoner in Pitts v. North Carolina, *supra* (16 years), or as long as the prisoner in Dickey v. Florida, *supra* (8 years), or even as long as the defendant in Smith v. Hooey, *supra* (7 years), in each of those cases the prosecuting agency was not the same as that having custody of the defendant during the pe-

---

5. The district court noticed and corrected several glaring errors in the reported transcript of the 1959 trial. The court found that the testimony which the transcript attributed to Mrs. Berel Grober was in fact that of Mrs. Rose Nadel. Moreover, the court found that although Mr. Ben Nadel had testified in 1959, his testimony was missing from the transcript. Based on a record with ac-

knowledged errors and omissions, we cannot find from its silence as to an attorney's objection a knowing waiver of appellant's constitutional rights.

6. The statute of limitations was tolled by the filing of the information in 1953.

7. The State's attorney in both the 1953 and 1959 prosecutions was the same man.

riod of delay. Murray, during the seven years, had always been available to the State of Florida residing as he did in its own penitentiary. As was true of 'the State of Texas in Smith v. Hooey, it is equally true of the State of Florida that a State is under an affirmative duty to try an accused within its jurisdiction within a reasonable time.[8] While this is undoubtedly the state of the law in post-Klopfer cases, in Florida it is the state of the law that existed when Murray was tried.[9]

## C. PREJUDICE

Inextricably meshed in the consideration of prejudice to a defendant in speedy trial cases has been the question of whether the State may permissibly retry the defendant. Since Murray has already completely satisfied the judgments of conviction outstanding against him, retrial is not an issue here.[10] The cases, however, are helpful to determine the extent to which a defendant must allege and prove prejudice. Cf. Dickey v. Florida, supra.

■ Delay in trial, in and of itself, is not enough to prevent a retrial, United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1965); nor is a defendant's naked assertion of a loss of memory sufficient. United States v. Fitzpatrick, 437 F.2d 19 (2nd Cir., 1971). Cases have required that the defendant make a showing of prejudice from delay

which amounts to a denial of due process. United States v. Sklaroff, 323 F. Supp. 296 (D.C.Fla., 1971). These cases further imposed the burden of establishing prejudice on the defendant. United States v. Rosenstein, 434 F.2d 640 (2nd Cir., 1970).

The District of Columbia Circuit, however, in Hedgepeth v. United States, 125 U.S.App.D.C. 19, 365 F.2d 952 (1966), required only a reasonable possibility of prejudice to require the district court to engage in a close examination of the record. That circuit has, in cases where the delay is excessive, imposed a burden on the prosecution to establish that the defendant was not prejudiced by that delay. Smith v. United States, 135 U.S.App.D.C. 284, 418 F.2d 1120 (1969). This circuit, in United States v. King, 431 F.2d 734 (5th Cir., 1970), appears to have adopted the same position.

■ However, where the delay is not only excessive but the result of unexcused inaction or misconduct by the Government, it is prima facie prejudicial. United States ex rel. Solomon v. Mancusi, 412 F.2d 88, 91 (2nd Cir., 1969). In such a case all the defendant need show is a faded memory. The burden then shifts to the Government which must demonstrate that defendant has not been prejudiced by the delay. Pitts v. North Carolina, 395 F.2d 182 (4th Cir., 1968); United States v. Blanca Perez, 310 F. Supp. 550 (S.D.N.Y., 1970).

---

8. In Dickey v. Florida, 393 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970), the Supreme Court held that where a defendant was at all times available to the State and there was no valid excuse for the prejudicial delay, the judgment of conviction must be vacated.

9. In Dickey v. Florida, supra, the Supreme Court, on the basis of Dickey v. Circuit Court, 200 So.2d 521 (Fla., 1967), commented that the declaration of rights, Florida Constitution, F.S.A. provision § 11. Rights of Accused; Speedy Trial; etc—"In all criminal prosecutions, the accused shall have the right to a speedy and public trial, by an impartial jury, in the county where the crime was com-

mitted * * *", was substantially coterminous with the similar guarantee of the Sixth Amendment, the latter being applicable to the States through the Fourteenth Amendment. Klopfer v. North Carolina, supra. Thus, in both Florida and Federal courts at the time of either of Murray's trials, an accused was entitled to a trial in the due course of orderly court procedures provided for trial of persons charged with a crime. State ex rel. Gayle v. Dowling, 91 Fla. 236, 107 So. 267 (1926); Klopfer v. North Carolina, supra.

10. For a thoughtful discussion of that issue, see United States v. Haggett, 438 F.2d 396, 400 (2nd Cir., 1971).

 In the case at bar the district court could find no prejudice, but the delay of six years is also unexplained and unexcused. Murray was from 1953 to 1969 incarcerated far from the scene of the January 23, 1953 robbery for which he was tried in 1959. In 1959 Murray relied on an alibi defense that he was, at the time of the offense, in jail in Miami Beach. However, incarcerated, indigent and without counsel Murray was unable to locate, track and preserve the names of fellow inmates in the Miami jail who might have been able to corroborate his story. Time also took its toll with the police records, which, although they showed that Murray had indeed been in jail on January 20, 1953, could not show when he had been released on bond. By 1959 the custodian of those records had died; his successor was able to state only that Murray had been arrested and was on bond sometime between January 20th and January 30th. The bondsman was unable to testify from his personal recollection that he had posted bond for Murray on January 26, 1953 as Murray asserts, nor did his records indicate when in January he had posted the bond. In our view this constitutes a sufficient showing of prejudice on Murray's part to shift the burden to the State to demonstrate that the six year delay had not prejudiced Murray's case.

Murray then has met and crossed each of the bridges required of him by our *Auerbach* decision. We conclude that the district court erred in denying Murray's application for habeas corpus relief on this point. However, since Murray is no longer confined by authority of the 1959 conviction, we need not remand this case to the district court for further proceedings. We do remand so that the district court may enter an order which takes such action under 28 U.S.C. A. § 2243, as "law and justice require." Carafas v. LaVallee, *supra*. In this case such an order may take the form of expunging the record of conviction. We, however, do not decide this question, but remand to the district court for appropriate action.

Accordingly, we affirm the denial of habeas corpus relief on defendant's 1953 conviction. We reverse the denial of habeas corpus relief on his 1959 conviction and remand for appropriate procedure consistent herewith.

The judgment below is affirmed in part, reversed in part and remanded for further proceedings.