Oscar TURNER, Petitioner-Appellant,

v.

W. J. ESTELLE, Jr., Director, Texas Department of Corrections, Respondent-Appellee.

No. 74–3764.

United States Court of Appeals, Fifth Circuit.

July 9, 1975.

Rehearing and Rehearing En Banc Denied Sept. 25, 1975.

Ted Redington, Staff Counsel for Inmates, Texas Dept. of Corrections, Huntsville, Tex., for petitioner-appellant.

Robert C. Flowers, Asst. Atty. Gen., R. L. Lattimore, George R. Bedell, Herman I. Little, Jr., Asst. Attys. Gen., Austin, Tex., for respondent-appellee.

Before CLARK, Associate Justice,* and GOLDBERG and AINSWORTH, Circuit Judges.

* Supreme Court of the United States (Retired), sitting by designation.

AINSWORTH, Circuit Judge:

In this appeal from the District Court's denial of a writ of habeas corpus, we must decide whether petitioner's conviction of robbery by assault in a Texas state court must be overturned on the ground that the state failed to afford petitioner a speedy trial. We conclude that Turner's right to a speedy trial has not been violated and affirm the decision of the District Court.

I. Factual Background

On April 21, 1967, Donnie Hutcheson, the proprietor of a small grocery store in Dallas, Texas, was robbed of several hundred dollars. During the robbery Hutcheson was shot three times and seriously wounded by an unknown assailant, who pursued him into the back room of his store. The room was completely dark, and the robber gave up on his wounded quarry, emptying the cash drawer on his way out.

On June 8, 1967, a violent robbery occurred at a filling station in West, Texas. The station attendants were being held at bay by two robbers when two men drove in. The attendants were told to "play it cool" and see what the men wanted. While the attendants were working on the car, one of the men got out, at which point the robber holding the pistol let loose a hail of bullets in the direction of the car. One of the attendants escaped, though wounded, and called for help. The other was also shot but could not get away. The gunman (who, it turned out, was petitioner Turner) walked over to him and, standing over him, fired again. Both attendants survived, but the two men in the car were killed in the original gunfire. The robbers were apprehended soon thereafter.

Donnie Hutcheson saw the television coverage of the filling station robbery and recognized one of the arrested suspects as the man who had robbed his grocery store and shot him. On June 11, 1967, he identified petitioner Turner, one of the two men arrested in connection with the filling station robbery, as his assailant. The record shows that these offenses were committed by Turner while he was out on bail in connection with a prior arrest in March 1967 for assault with intent to murder.

An indictment was handed down against Turner by the Dallas County Grand Jury on July 14, 1967, charging him with robbery with firearms (later changed to robbery by assault). No action was taken on the indictment, however, because Turner was still being held for trial on murder charges in connection with the filling station robbery in West, Texas. The murder trial, held in Waco, Texas, resulted in Turner's conviction of first degree murder in January 1968. The jury imposed the death penalty, and a protracted series of appeals ensued. The conviction was affirmed by the Texas Court of Criminal Appeals in an exhaustive opinion analyzing sixty assignments of error. Turner v. State, Tex.Cr. App., 1969, 462 S.W.2d 9. Because Turner was convicted by a death-qualified jury, however, the Supreme Court reversed the judgment of conviction "insofar as it imposes the death sentence," relying on Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968). Turner v. State, 403 U.S. 947, 91 S.Ct. 2289, 29 L.Ed.2d 858 (1971).

On remand, the Texas Court of Criminal Appeals held that although a commutation of Turner's jury-imposed death sentence would preserve the conviction, there had been no such action, and therefore the conviction would have to be reversed, since under Texas law the punishment imposed by a jury may not be reassessed. Turner v. State, Tex.Cr. App., 1972, 485 S.W.2d 282 (June 28, 1972).[1] Upon being advised, however, that the Governor had granted a commu-

---

1. In any event Turner would not have been released if the commutation had not occurred, because he had pleaded guilty to a charge of escape in January 1971, receiving a five-year Texas state sentence.

tation of Turner's death sentence to life imprisonment on August 29, 1972, the court set aside its judgment of reversal and reinstated the conviction. Turner v. State, Tex.Cr.App., 1972, 485 S.W.2d 282, 284 (1972).[2]

Turner, in the meantime, had initiated legal proceedings to compel the State of Texas either to try him for robbing Hutcheson or dismiss the charges. On June 2, 1971, he filed an application for a writ of habeas corpus in the Texas Court of Criminal Appeals, which treated Turner's papers as a petition for a writ of mandamus and forwarded them to the Supreme Court of Texas for consideration.[3] There ensued some correspondence between Turner and the Texas Supreme Court concerning discrepancies between his name and the names on the detainers he sought to have dissolved, and concerning the status of a Dallas attorney whom the Court believed to be Turner's counsel.

Having clarified these matters, the Supreme Court wrote a letter on August 19, 1971, to the Criminal District Court concerning the status of Turner's robbery indictment and several others then pending against him. On October 7, 1971, the trial judge to whom Turner's case had been assigned informed the Supreme Court that he had issued a bench warrant for Turner on September 13, 1971, but that upon arriving at the prison in Huntsville, Texas, the sheriff had been told that Turner was under a sentence of death. The trial judge instructed the sheriff not to pursue matters further as long as Turner was on death row.

The Texas Supreme Court advised Turner that it could not consider his petition in light of the death sentence it believed was pending. In a letter to the Court dated October 21, 1971, Turner explained that he was no longer under a death sentence, but the Court, for reasons unspecified, concluded that it did not have jurisdiction to grant the relief he requested anyway.

On November 3, 1971, Turner sought relief from the United States District Court for the Northern District of Texas, alleging denial of his right to a speedy trial. On January 29, 1972, the District Court ordered that further proceedings in the robbery case and other matters pending against Turner be permanently stayed unless the State of Texas granted him a trial on the charges within sixty days. That order was entered without prejudice to his right to assert his speedy trial claim at trial.

On March 27, 1972, Turner's robbery case went to trial. The court held a hearing on Turner's speedy trial claim but found no violation of his rights. The jury returned a verdict of guilty and assessed punishment at life imprisonment. The conviction was affirmed on appeal. Turner v. State, Tex.Cr.App., 1974, 504 S.W.2d 843. The present habeas corpus petition was filed shortly thereafter, alleging denial of Turner's right to a speedy trial.

## II. Application of the Legal Standard

In applying speedy trial principles to the foregoing facts, we recognize that the very nature of the right "compels courts to approach speedy trial cases on an *ad hoc* basis." Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101 (1972). The right to a speedy trial is "a more vague concept than other procedural rights. It is, for example, impossible to determine with precision when the right has been denied." Barker v. Wingo, *supra,* 407 U.S.

---

**2.** It is the possibility of an adverse effect on his future parole prospects that gives practical significance to Turner's second life sentence, imposed pursuant to his conviction of robbery by assault, and jurisdiction to the District Court to entertain his habeas petition.

**3.** The Court of Criminal Appeals' reason for this action does not appear from the record.

We note, however, that Turner was not in custody pursuant to any proceedings in connection with the robbery indictment, Vernon's Ann.Tex.Code Crim.P. Arts. 11.01, 11.21–23. Rather, he was serving out a sentence for a charge of escape to which he had pled guilty in January 1971.

at 521, 92 S.Ct. at 2187. Unlike, for example, double jeopardy, "[t]he right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances." Barker v. Wingo, *supra,* 407 U.S. at 522, 92 S.Ct. at 2188. In *Barker* the Supreme Court identified four factors the courts are to consider in adjudicating speedy trial claims: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. at 530, 92 S.Ct. at 2192. Weighing all these factors, we must conclude that petitioner has failed to establish a denial of his right to a speedy trial.

## A. Length of the Delay

■■ Petitioner was brought to trial four years and eight months after he was indicted for the robbery.[4] In *Barker* the Court noted that the length of the delay is a triggering mechanism. There must be some substantial delay before any need arises to inquire into the other factors. Here the delay was substantial—clearly sufficient to require that we look further. We note, however, that by itself the length of the delay cannot justify overturning the conviction. In *Barker* the delay in bringing the defendant to trial was well over five years, yet the Court concluded, upon considering all the circumstances, that the right to a speedy trial had not been denied.

## B. Reasons for the Delay

In this case the reason offered by the State of Texas for the delay in bringing Turner to trial is an unusual one: the pendency of his trial for first-degree murder in Waco, Texas, and the inevitably time-consuming appeals from the conviction and death sentence that fol-

lowed. Simply put, Texas' position is that it justifiably chose not to expend scarce judicial and prosecutorial resources in trying a defendant facing a death sentence, the execution of which obviously would have eliminated the need for any trial at all.[5]

In *Barker* and the speedy trial cases in this Court we find three kinds of reasons for delay in bringing a defendant to trial. "A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government." Barker v. Wingo, *supra,* 407 U.S. at 531, 92 S.Ct. at 2192. Thus in Arrant v. Wainwright, 5 Cir., 1972, 468 F.2d 677, we overturned the conviction of a defendant brought to trial nearly two years after being indicted because, when called upon to justify the delay, the prosecutor stated that he did not want to see the defendant acquitted of the crime. "A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than the defendant." Barker v. Wingo, *supra,* 407 U.S. at 531, 92 S.Ct. at 2192. *See* United States v. Shepherd, 5 Cir., 1975, 511 F.2d 119; United States v. Rodriguez, 5 Cir., 1975, 510 F.2d 1. "Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." Barker v. Wingo, *supra,* 407 U.S. at 531, 92 S.Ct. at 2192. *See* United States v. Rosson, 5 Cir., 1971, 441 F.2d 242 (reasonable delays to permit the prosecution to gather evidence and locate missing witnesses do not violate the right to a speedy trial); Harlow v. United States, 5 Cir., 1962, 301 F.2d 361 (*id.*) (overruled on other grounds, Murray v. Wainwright, 5 Cir., 1971, 450 F.2d 465).[6]

---

**4.** The delay is measured from the date of the indictment. United States v. Marion, 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971); United States v. Joyner, 5 Cir., 1974, 494 F.2d 501, 505.

**5.** The District Court adopted the Magistrate's report, which did not give great weight to this reason. Judged by the standards we derive

from *Barker* and subsequent cases, however, it is, we believe, a compelling one.

**6.** In *Barker* itself, the prosecution justified the delay in bringing the defendant to trial on the ground that it was necessary to try an accomplice first in order to have him available as a witness at Barker's trial. Six trials were required to convict the accomplice, during which

We believe the reason offered by the State of Texas for the delay in bringing this defendant to trial falls in the last category. If a delay to enable the prosecution to locate witnesses and accumulate evidence is valid, it is also valid for the state to wait until it is clear that the expense, inconvenience to witnesses and jurors, burden on prosecutorial and judicial resources, and vexation to the defendant that a trial inevitably causes will in fact be necessary.[7] *See generally* United States v. Kress, 9 Cir., 1971, 451 F.2d 576, 577; United States v. Holt, 1971, 145 U.S.App.D.C. 185, 448 F.2d 1108, 1112; Moser v. United States, 9 Cir., 1967, 381 F.2d 363, 364. Within ten months of the time at which it became clear a trial would be necessary, petitioner was brought to trial. We conclude that this factor weighs heavily against finding a denial of Turner's right to a speedy trial.[8]

## C. Untimeliness of Defendant's Assertion of His Right

Before *Barker* the rule in this circuit for many years was that a speedy trial claim could not be based on delay occurring prior to the defendant's demand for an immediate trial or dismissal of the indictment for failure to grant a speedy trial. *See, e. g.,* Harlow v. United States, 5 Cir., 1962, 301 F.2d 361, overruled in Murray v. Wainwright, 5 Cir., 1971, 450 F.2d 465. *Barker* rejected this absolute rule, but left no doubt that the defendant's assertion of his desire to be tried immediately is to be considered in deciding whether his right to a speedy trial has been denied:

> The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. *We emphasize that failure to assert the right will*

---

period the prosecution made sixteen successful motions for continuances of Barker's trial. The Court noted that, although this reason might be persuasive under normal circumstances, it was unconvincing because the delay was due in large part to the state's "failure or inability to try [the accomplice] under circumstances that comported with due process." *See* United States v. Joyner, 5 Cir., 1974, 494 F.2d 501. In the present case, the delay occasioned by Turner's murder case cannot be attributed to a lack of respect for due process on the part of the prosecution. The Supreme Court based its reversal of petitioner's death sentence—Witherspoon v. State of Illinois, 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968)—which was not decided until two months after petitioner's murder conviction, which was affirmed by the state appellate court.

7. Counsel for Turner noted at oral argument that, unlike the prosecutors in *Barker,* the prosecutors in this case did not seek continuances from the court but rather took it upon themselves to hold the case in abeyance. In most cases, this contention would be significant. In the present case, however, as we noted in our statement of the facts, the state courts were as disinclined as the prosecutors to try a defendant already under a death sentence. Under these circumstances we view the prosecutors' decision to wait as based on a recognition of state court policy rather than an intention to circumvent it.

8. A substantial part of this ten-month period was itself attributable to a confusion over Turner's name and the name in the robbery detainer, and over Turner's status in the state penitentiary. As noted in our statement of the facts, Turner filed a habeas petition, seeking a speedy trial, in the state court on June 2, 1971, nearly a month before his death sentence was overturned. On July 27, 1971, the Supreme Court of Texas, which had received Turner's petition from the Court of Criminal Appeals, asked Turner for a clarification concerning the discrepancy between his name as signed in the petition (Oscar Turner) and the names appearing in the detainers (Oscar Turner Davis and Oscar Davis Turner). Turner explained that his mother (named Turner) had married a man named Davis, and he had been told his name had been changed to that of his stepfather. He later learned that no legal change had actually taken place and resumed his former name (Turner), but the name Davis had appeared on a number of his records.

There followed some correspondence between the Texas Supreme Court and the trial judge in whose court the robbery indictment was pending, as we have outlined in our statement of facts. Neither the state courts nor the prosecutors were aware of the reversal of Turner's death sentence until, at the earliest, October 21, 1971, when Turner explained his situation to the court in a letter. He was tried slightly more than five months later.

*make it difficult for a defendant to prove that he was denied a speedy trial.*

407 U.S. at 531–532, 92 S.Ct. at 2192–2193 (emphasis added).

Defendant first asserted his right to a speedy trial nearly four years after his indictment.[9] His long and unexplained delay in raising this issue must be weighed against him in this speedy trial claim. *Compare* United States v. Shepherd, 5 Cir., 1975, 511 F.2d 119; United States v. Lane, 5 Cir., 1972, 465 F.2d 408, *with* Moore v. Arizona, 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973); Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970); Prince v. State of Alabama, 5 Cir., 1975, 507 F.2d 693.

### D. Defendant's Failure to Show Prejudice

In *Barker* the Supreme Court identified three reasons for requiring the state to bring a defendant to trial promptly: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." 407 U.S. at 532, 92 S.Ct. at 2193. Prejudice, like the other three factors, is neither inherently necessary nor inherently sufficient for finding that the defendant's right to a speedy trial has been violated.

This Court has had occasion to describe the circumstances in which no showing of prejudice is required: "there must be some point of coalescence of the other three factors in a movant's favor, at which prejudice—either actual or presumed—becomes totally irrelevant." Hoskins v. Wainwright, 5 Cir., 1973, 485 F.2d 1186, 1192. The reason for dispensing with the prejudice requirement entirely when the other three factors point heavily toward a violation of speedy trial is deterrence: the prosecution should not be permitted to engage in inexcusable misconduct [10] on the hope that the defendant will not be able to make out a case of prejudice. Where such misconduct has occurred, the state cannot complain that the legitimate interests of its criminal justice system, being pursued in good faith, are being sacrificed because of an honest mistake in a case in which no ultimate harm has been done. Mindful of the difficulties sometimes encountered in weighing prejudice, this Court has concluded that it will not undertake such an inquiry where the prosecutorial error to be forgiven by a finding of no prejudice is flagrant and inexcusable:

9. At the state court pretrial hearing on his motion to quash the robbery indictment, Turner stated that in 1969 he had sent a letter to the prosecutor in Dallas requesting that he be returned there for trial on the robbery charge. He also stated that he tried to communicate requests for legal assistance in obtaining a speedy trial to the attorneys appointed for him in the murder case and to another attorney, but that prison officials deliberately thwarted his efforts. The District Court ignored the finding of the Texas Court of Criminal Appeals that there was insufficient proof of these efforts, but made no findings of its own. Our review of the record, *see* Perry v. State of Texas, 5 Cir., 1972, 456 F.2d 879, 881, convinces us that Turner's assertions are wholly without corroboration. Turner did not call any of the attorneys in question or state officials to testify at the hearing and could not produce any written record of such communications. Thus we must conclude, as the Texas Court of Criminal Appeals did, that Turner has failed to establish an assertion of his right to a speedy

trial prior to June 2, 1971. If Turner had not had counsel or had shown that his attorneys (whom the state appellate court reviewing his murder conviction described as "excellent") had ignored a request for help or even to inquire into the robbery charge, which concededly was not their case, petitioner's failure to assert his right to a speedy trial might be viewed differently. *Cf.* United States v. Dyson, 5 Cir., 1972, 469 F.2d 735; Murray v. Wainwright, 5 Cir., 1971, 450 F.2d 465. Under the present state of the proof, however, there is a failure to assert the right without any credible explanation. The fact that counsel was not appointed in the robbery case is by no means dispositive. See United States v. Singleton, 2 Cir., 1972, 460 F.2d 1148, 1151; United States v. Smalls, 2 Cir., 1971, 438 F.2d 711, 714.

10. *See* Murray v. Wainwright, 5 Cir., 1971, 450 F.2d 465, 471 ("[W]here the delay is not only excessive but the result of unexcused inaction or misconduct by the Government, it is prima facie prejudicial.")

At some juncture in a criminal prosecution the government's lengthy, inexplicable delay, in the face of vigorous demands for an immediate trial, is so offensive to the Sixth Amendment's guarantee of a speedy trial that a Court must intervene regardless of whether the defendant has been incarcerated, subjected to public scorn and obloquy, or impaired in his ability to defend himself.

Hoskins v. Wainwright, *supra,* 485 F.2d at 1189 n. 3.

In the present case there is no evidence of the prosecutorial bad faith at which the rule in *Hoskins* was aimed. Armed with a very strong case,[11] the prosecutors had no reason other than the one they gave—avoiding a needless trial by awaiting the outcome of defendant's appeals—for delaying the trial. Their case could only grow weaker with delay, because it depended on the clear identification and memory of the victim, who was the sole eyewitness.

In *Hoskins* the delay was well over eight years. The state offered no legitimate excuse whatsoever for its failure to bring the defendant to trial, which he had promptly and repeatedly demanded. The circumstances of the present case are quite different: the delay is long (although considerably shorter than in *Hoskins*), but the state has offered a strong reason for postponing the trial, and the defendant's failure to assert his desire to be tried, although somewhat more understandable than the failure of the defendant in *Barker,* has not been adequately explained. Because the other three factors do not coalesce in defendant's favor, a showing of prejudice is necessary. *Cf.* Prince v. State of Alabama, 5 Cir., 1975, 507 F.2d 693, 706–707 (showing of prejudice held unnecessary in case of nine-year delay caused by un-justified inaction in the face of repeated demands for trial).[12]

Turner suffered no prejudice from pretrial incarceration because he was in prison anyway. *Cf.* Barker v. Wingo, *supra* (defendant incarcerated for ten months prior to trial due to inability to post bond). As for the "anxiety and concern" mentioned in *Barker* and the "public obloquy" mentioned in *Hoskins* and other cases, we doubt that these further clouded Turner's mood while he was on death row for multiple murders.

Petitioner offers no specific showing of prejudice on these grounds, but asserts that the delay impaired his ability to defend himself, due to the death of two alibi witnesses and the destruction of records showing his employment with the Georgia Pacific Company at the time of the robbery. The Georgia Pacific records, petitioner contends, would have shown that he was employed by the company and was operating a truck in Dallas on the day of the robbery, and would have shown the mileage he drove on his route and the stops he made.

At the pretrial hearing a bookkeeper for the Georgia Pacific Company testified that company employment records are kept only until the end of the third calendar year after an employee leaves the company. Petitioner and his mother testified that he had given her other Georgia Pacific records for safekeeping, but that these papers could not be located now. In his pretrial testimony Turner also mentioned check stubs from a company called Paymaster Feeds. He stated these were on his person when he was arrested for the murders in West, Texas, and that they would have explained why a substantial amount of cash was found in his car by the arresting officers, but the jail officials destroyed the stubs to frustrate his alibi.

11. During the robbery, Hutcheson had three separate opportunities to view his assailant, who made no attempt to hide his face. His identification of Turner shortly after the robbery was voluntarily offered as a result of seeing him in the television coverage of the murders in West, Texas, and was positive.

12. Even if Turner is held absolutely blameless for not taking any steps toward seeking a trial, the state's reason for the delay prevents the coalescence of the first three factors in defendant's favor, as required by *Hoskins* and *Prince, supra.*

The deceased alibi witnesses were Turner's aunt and a friend, who both lived in Dallas at the time of the robbery. Turner stated that his aunt would have testified that he stopped by her house at 9:45 or 10 a. m. on the morning of the robbery, before he began his deliveries. The friend would have testified that he visited her on the evening of the robbery while still making deliveries in his truck, thus corroborating his statement that he was working for Georgia Pacific on the day of the robbery.

The Georgia Pacific records and testimony of the two alibi witnesses would not have improved Turner's position at trial significantly. By his own admission, Turner began his route for the company after visiting his aunt at approximately 10 a. m. The robbery occurred at approximately 8:45 a. m. Neither the visit to his aunt, the visit to his friend that evening, nor the records of the company would have established any facts inconsistent with Turner's commission of the crime. As for the allegation that the jail officials destroyed the check stubs, at the pretrial hearing Turner had the opportunity to ask the arresting officer about the items found at the time of his arrest, but no questions were asked concerning the check stubs. By failing to demonstrate how the testimony and records would have materially aided his case, Turner has failed to establish prejudice from the delay in bringing him to trial. *See* United States v. Shepherd, 5 Cir., 1975, 511 F.2d 119; United States v. Rodriguez, 5 Cir., 1975, 510 F.2d 1, 3; United States v. Lane, 5 Cir., 1972, 465 F.2d 408, 412; United States v. King, 5 Cir., 1970, 431 F.2d 734, 735. *See generally* United States v. McKim, 5 Cir., 1975, 509 F.2d 769, 773; United States v. Beckham, 5 Cir., 1975, 505 F.2d 1316, 1319–1320.[13]

Our analysis of the four factors thus presents this picture: a delay not as long

as that in *Barker*, justified here by a substantially more persuasive reason; a failure to assert the right, similar to some degree to the defendant's failure in *Barker*; and an absence of prejudice even clearer than that in *Barker*. Under the circumstances of this case, our weighing of these factors leads us to conclude that, as in *Barker*, there was no violation of the defendant's right to a speedy trial.

Affirmed.

**13.** The prejudice alleged in this case bears comparison with the prejudice successfully shown in Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970). In that case two witnesses were unavailable, due to disappearance and death, who would have provided an ironclad alibi for the defendant. The jailer, who was the only one present when a witness identified the defendant, had died. The police officer who took down the witness' account of the robbery had lost his notes.