McCoy JAMERSON, Petitioner-Appellant,

v.

W. J. ESTELLE, Jr., Director, Texas Department of Corrections, Respondent-Appellee.

No. 80–1683.

United States Court of Appeals, Fifth Circuit.*
Unit A

Jan. 25, 1982.

* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

Sharon Garner, c/o Vinson & Elkins, Houston, Tex., for petitioner-appellant.

Mark White, Atty. Gen., Leslie A. Benitez, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before WISDOM, GEE and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

On February 6, 1970, McCoy Jamerson was arrested in Grand Prairie, Texas, for public drinking and illegal parking. Two days later, after being informed of his *Miranda* rights,[1] Jamerson confessed to a January 20, 1970 Pantego, Texas, service station robbery, during which his accomplice murdered the attendant. On March 17, 1970, a Texas grand jury indicted Jamerson for this armed robbery.

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

In April of 1971, Jamerson was tried and convicted of an unrelated homicide and sentenced to death.[2] The Texas statute prescribing the death penalty was declared unconstitutional by the Supreme Court in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Subsequently, on February 15, 1974, Jamerson's sentence was commuted to life by the Governor of Texas.

No steps were taken to further the prosecution of the indictment for the Pantego armed robbery until 10 months after the Supreme Court nullified the Texas death penalty. On June 5, 1973, counsel was appointed to represent Jamerson on the armed robbery charge. The case was tried in November of 1973, ending in a mistrial resulting from a hung jury. The re-trial of the armed robbery charge ended on March 19, 1974, with a verdict of guilty and assessment of a sentence of 50 years imprisonment. On November 5, 1975, this conviction was affirmed by the Texas Court of Criminal Appeals, which subsequently refused to grant habeas relief. The instant application for federal habeas relief under 28 U.S.C. § 2254 was denied by the district court. We affirm.

On appeal, Jamerson claims four errors: (1) denial of his sixth amendment right to a speedy trial; (2) denial of due process by the cumulation of sentences; (3) denial of constitutional rights because of the delay between his indictment and service of that indictment; and (4) use of an unconstitutionally obtained confession.

## I. RIGHT TO A SPEEDY TRIAL

■ Between the indictment and trial on the armed robbery charge 44 months elapsed. We must determine whether this delay violated Jamerson's sixth amendment right to a speedy trial by applying the standard articulated by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Recently, in *United States v. Greer*, 655 F.2d 51, 52 (5th Cir. 1981), we summarized the tetrad standard against which we must measure the elusive speedy trial guarantee: "(1) duration; (2) reason for the delay; (3) defendant's assertion of the right; and (4) prejudice caused by the delay." No single factor is determinative in the analysis; they "must be considered together with such other circumstances as may be relevant." 407 U.S. at 533, 92 S.Ct. at 2193.

■ As a threshold consideration, the length of the delay must be examined and found to be "presumptively prejudicial." Otherwise, inquiry into the other considerations is unnecessary. *See United States v. Walters*, 591 F.2d 1195 (5th Cir. 1979), *cert. denied*, 442 U.S. 945, 99 S.Ct. 2892, 61 L.Ed.2d 317 (1980); *United States v. Wentland*, 582 F.2d 1022 (5th Cir. 1978), *cert. denied*, 439 U.S. 1133, 99 S.Ct. 1056, 59 L.Ed.2d 96 (1979); *United States v. Edwards*, 577 F.2d 883 (5th Cir.), *cert. denied*, 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978). The 44 month period in the instant case is almost triple the 15 month delay decreed presumptively prejudicial in *United States v. Avalos*, 541 F.2d 1100 (5th Cir. 1976), *cert. denied*, 430 U.S. 970, 97 S.Ct. 1656, 52 L.Ed.2d 363 (1977). With the threshold consideration satisfied, we turn our attention to the reasons for the lengthy, presumptively prejudicial, delay.

From April 22, 1971 until February 15, 1974, Jamerson was under a death sentence. Texas argues that the existence of this death sentence provides a legitimate, justifiable reason for the post-indictment delay presently in question. The contention is manifestly well-founded. In *Turner v. Estelle*, 515 F.2d 853 (5th Cir. 1975), *cert. denied*, 424 U.S. 955, 96 S.Ct. 1431, 47 L.Ed.2d 361 (1976), we recognized that conservation of prosecutorial and judicial resources is a valid ground for a post-indict-

---

**2.** Jamerson was convicted of the robbery-murder of a female service station attendant in Irving, Texas on February 4, 1970. The victim had been shot four times in the back. Jamerson confessed to this murder and confessed his participation in the Pantego robbery-murder as well as a murder in Grand Prairie on February 4, 1970 and a robbery in Grand Prairie on February 3, 1970. His murder conviction was reversed because of the admission of evidence of extraneous offenses in *Jamerson v. State*, 550 S.W.2d 287 (Tex.Cr.App.1977).

ment delay and noted that: "Texas' position is that it justifiably chose not to expend scarce judicial and prosecutorial resources in trying a defendant facing a death sentence, the execution of which would have eliminated the need for any trial at all." 515 F.2d at 856. We found this reasoning to be compelling in *Turner.*

The case before us presents a situation closely akin to the factual circumstance in *Turner.* After Jamerson was indicted for armed robbery, he was convicted of murder and sentenced to death. The validity of this sentence was put into question by the *Furman* decision of the United States Supreme Court in June, 1972. Afterwards, the sentence was commuted to life. In the meantime, when the likelihood of commutation became apparent, the Texas authorities proceeded with the prosecution of the robbery indictment. Sixteen months elapsed between the *Furman* decision and the trial on the robbery charge.

We believe it appropriate to examine the 44 months in discrete parts. The failure to prosecute from the time of indictment until *Furman* was announced is entirely excusable. During that time Jamerson was incarcerated under a sentence of death. The sixth amendment does not require that he be brought to trial for a non-capital offense during that period.

Moreover, the Texas prosecutorial authorities refer to the uncertainty inherent in Jamerson's position until the actual commuting of his sentence. Although we do not accept as reasonable total inaction until the formal commutation, the record reflects that the Texas authorities began prosecutorial steps. Jamerson was brought to trial prior to the commutation order. Hence, the period of delay alone does not suffice to justify overturning the conviction.[3] In striking the appropriate sixth amendment balance, we must examine the third and fourth *Barker v. Wingo* elements.

The third factor outlined in *Barker v. Wingo* concerns the defendant's action or inaction in asserting the speedy trial right. In June, 1973 counsel was appointed to aid Jamerson in his defense of the armed robbery charge. Neither Jamerson nor his counsel complained of delay until November 12, 1973, the day the trial began. Considering all of the circumstances, the district court, in adopting the federal magistrate's report, assigned a neutral value to this inaction. We consider significant the fact that neither Jamerson nor his attorney pressed for a swifter trial.

The fourth and final consideration in the *Barker v. Wingo* equation, prejudice, is "the most difficult to evaluate qualitatively and quantitatively." *United States v. Greer,* 655 F.2d at 53. In the analysis of the prejudice issue, we find valuable assistance in the Supreme Court's identification of three interests which are guarded by the right to a speedy trial: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." 407 U.S. at 532, 92 S.Ct. at 2193.

The first two interests are not applicable in the instant suit. Jamerson was lawfully incarcerated under a death sentence during nearly all of the delay time. Oppressive pretrial incarceration is not an issue. Further, in view of the pending death sentence, an outstanding armed robbery indictment could occasion little additional anxiety or concern.

Only the third interest, impairment of a defense, raises a substantial question. Following Jamerson's arrest in Grand Prairie on February 6, 1970, he confessed to the Pantego armed robbery and murder as well as other offenses.[4] At his trials, the principal prosecution witnesses were Marvin Stapleton, Chief of Police, Pantego, Texas, and Donald Sherman, Grand Prairie police department, whose recall of the events sur-

---

**3.** "Closely related to the length of delay is the reason the government assigns to justify the delay." *Hill v. Wainwright,* 617 F.2d 375, 378 (5th Cir. 1980).

**4.** See note 2, *supra.*

rounding Jamerson's arrest and confession were at times spotty.[5] The lapse of witnesses' memories may impair a defendant's ability to present his defense.

However, while "faded memory may result in prejudice, we have held that in order to prejudice the defense to the extent necessary to constitute a speedy trial violation, the faded memory must substantially relate to a material fact in issue." *United States v. Edwards*, 577 F.2d 883, 889 (5th Cir.), *cert. denied*, 439 U.S. 968, 99 S.Ct. 458, 58 L.Ed.2d 427 (1978). *See United States v. Avalos*, 541 F.2d 1110 (5th Cir. 1976), *cert. denied*, 430 U.S. 970, 97 S.Ct. 1656, 52 L.Ed.2d 363 (1977). Jamerson has made no affirmative showing how the lapse of memory by the prosecution's witnesses impaired the presentation of his defense. We cannot raise speculation or mere conclusional observations regarding a witness' memory to the level of constitutional prejudice. Jamerson has failed to demonstrate sufficient prejudice resulting from the post-indictment delay to obtain relief under the *Barker v. Wingo* rubric.

## II. CUMULATIVE SENTENCE ORDER

At the conclusion of Jamerson's state court armed robbery trial, the court assessed a 50 year sentence and stated:

the sentence in this cause shall commence when the Judgment and sentence in Cause No. C–70–1351–KL for the offense of murder received in Dallas County, Texas, and the Punishment of Death, commutted to Life, received on April 22, 1971, has ceased to operate.

Eighteen months later the court entered a *nunc pro tunc* order which included the number of the Dallas court in which Jamerson had been found guilty of murder. Jamerson contends that the failure to designate the court number in which he was convicted of murder renders the cumulative order void, an error that was not cured by the *nunc pro tunc* entry. In addition, Jamerson argues that the sentencing omission was so grave as to deny him due process and fundamental fairness.

■ We are not persuaded that the omission of the number of the court, in the context presented, even approaches the deprivation of a fundamentally fair proceeding. This allegation is devoid of merit. At most, an error of state procedure occurred which is not subject to examination in a federal habeas proceeding. *See Hall v. Wainwright*, 493 F.2d 37 (5th Cir. 1974); *Pringle v. Beto*, 424 F.2d 515 (5th Cir. 1970).

## III. DELAY IN SERVICE OF THE INDICTMENT

■ Jamerson's indictment was handed up on March 17, 1970. It was not served until May 21, 1973. The delay of over three years is prohibited by Texas law.[6] Against this backdrop, Jamerson attempts to convert the service failure into a denial of due process.

■ Although Jamerson was entitled to prompt service of the felony indictment, this right emanated from the Texas Code of Criminal Procedure and not from the United States Constitution. A denial of a constitutional right must be shown for federal habeas corpus relief to be available.[7]

5. Specifically, Jamerson asserts six topics which were not fully explored due to witnesses' memory loss: (1) whether, immediately upon arriving at the police station, Stapleton saw him; (2) whether his clothes were crumpled and wrinkled at the time the confession was signed; (3) whether he was alone in his cell; (4) whether marks were visible on his face when he signed the written confession; (5) the identity of the person who typed the statement; and (6) the identity of the witness who reported the criminal incident.

6. Tex.Crim.Pro.Code Ann. art. 25.01 (Vernon):

In every case of felony, when the accused is in custody, or as soon as he may be arrested, the Clerk of the Court where an indictment has been presented shall immediately make a certified copy of the same, and deliver such copy to the Sheriff, together with a writ directed to such Sheriff, commanding him forthwith to deliver such certified copy to the accused.

7. "Assuming that the allegations of the petition are true, we need not reach the merits of this issue since it is clear that no violation of the constitutional rights of petitioner has been alleged. Hence the claim is not cognizable under

In determining whether the delay in informing Jamerson of his felony indictment reaches constitutional proportions we consider analogous the methodology for analyzing the sixth amendment speedy trial right. Employing the same balancing considerations discussed above, we reach the same conclusion that Jamerson's guarantee of a fundamentally fair proceeding was not denied by the lapse of time from the indictment's return until its service.

## IV. THE CONCLUSION

Jamerson's final contention is that his confession should not have been admitted. He challenges the confession on two grounds: he was not brought before a magistrate timely, and the confession was not freely and voluntarily given.

■ The issues surrounding the confession were presented to the Texas trial court, out of the hearing of the jury and before the confession was introduced in evidence. Evidence was adduced; Jamerson testified. The state trial judge considered the evidence and ruled that the confession was made freely and voluntarily, within the bounds of the constitutional requirements. "In a federal habeas corpus proceeding there is a presumption of correctness that is attached to a state court's fact-findings after a hearing has occurred on the merits of the factual issue." *Thomas v. Estelle*, 582 F.2d 939, 941 (5th Cir. 1978). Jamerson has failed to carry the burden of overcoming the presumption of correctness that attached to the state trial judge's conclusion that his confession was legally obtained.

The judgment of the district court is AFFIRMED.

---

28 U.S.C.A. § 2254 and was properly denied." *Johnston v. Estelle*, 548 F.2d 1238, 1239 (5th Cir.), *cert. denied*, 434 U.S. 850, 98 S.Ct. 161, 54 L.Ed.2d 118 (1977) (*citing Willeford v. Estelle*, 538 F.2d 1194 (5th Cir. 1976); *Bell v. Estelle*, 525 F.2d 656 (5th Cir. 1976); *Pringle v. Beto*, 424 F.2d 515 (5th Cir. 1970)).