Anthony ESPERTI, Petitioner,

v.

Louis WAINWRIGHT, Secretary, Department of Offender Rehabilitation, State of Florida, Respondent.

No. 75–865 Civ. T–K.

United States District Court,
M. D. Florida,
Tampa Division.

March 16, 1978.

**1290**

Milton E. Grusmark, Miami, Fla., for petitioner.

William I. Munsey, Jr., Asst. Atty. Gen., Tampa, Fla., for respondent.

## MEMORANDUM OF DECISION

KRENTZMAN, District Judge.

This is a habeas corpus proceeding pursuant to 28 U.S.C. § 2254, wherein petitioner, Anthony Esperti, seeks release from confinement because of alleged violation of his sixth amendment right to speedy trial by the respondent, State of Florida. The petitioner was indicted in Dade County, Florida, on January 16, 1968, for the murder of Thomas Altamura. On March 4, 1968, petitioner's trial in Dade County commenced. After the presentation of the evidence, the arguments of counsel, and court's charges, the jury was unable to return a unanimous verdict and the judge declared a mistrial on March 8, 1968. After one interim change of venue, to Collier County, the state court, on August 12, 1968, ordered the change of venue of the case to Polk County, Florida. Petitioner's second trial began on October 11, 1971, and was completed on October 15, 1971, with the jury's finding of guilt. The petitioner was sentenced to life imprisonment. On direct appeal to the Florida District Court of Appeal, petitioner's conviction was affirmed by a unanimous panel.

*Esperti v. State*, 276 So.2d 58, 61 (2d D.C.A. Fla. 1973), *reh. denied*, May 3, 1973, *cert. denied*, 285 So.2d 614 (Fla.1973), *reh. denied*, December 12, 1973.

The primary thrust of petitioner's claim is that his sixth amendment right to speedy trial was violated by prejudice resulting because of the delay between the completion of the first trial and the commencement of the second trial. In addition to the length of delay, petitioner alleges that the death of a "material" witness and the loss of a state exhibit severely prejudiced his rights at the second trial.

The United States Magistrate of this Court, pursuant to a general order of assignment, submitted a report recommending an evidentiary hearing on petitioner's speedy trial claim. The Court conducted such a hearing on September 29, 1976, and thereafter permitted the parties additional time to submit post-hearing memoranda. The respondent supplied the Court with a transcript of the first and second trials along with some of the physical evidence introduced at the second trial.

In *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court delineated four criteria to be considered in evaluating whether a constitutional speedy trial violation has occurred. They are: 1) length of delay prior to trial; 2) reasons for the delay; 3) petitioner's assertion of his right to speedy trial; and 4) prejudice to the petitioner. The Court will analyze petitioner's claim in light of the *Barker* criteria.

## FINDINGS OF FACT

1. *Length of Delay.* From the date a mistrial was declared in the first trial, March 8, 1968, until the date the second trial commenced, October 11, 1971, approximately three years and seven months transpired. The defendant was in custody during the entire period in question.

2. *Reasons for Delay.* The parties stipulated to a chronology of the significant events which occurred in the case. Although the stipulation does not attribute

any delay to either party, it is helpful in analyzing the events between the two trials. A copy of the stipulated chronology with a few of the Court's additions is made an appendix to this memorandum of decision.

The delay in the second trial can be attributed to various and sundry reasons and to three sources: the petitioner; the respondent; and the state court. Although it is not necessary to detail each and every moment between the two trials and consider a rationale for the delay, the Court will attempt to highlight the significant developments relating to the delay.

From March 8, 1968, the date a mistrial was declared, until August 12, 1968, the state court was preoccupied with the petitioner's motions for change of venue, motion to suppress, and motion to compel disclosure of favorable evidence. In light of the substantial publicity and coverage the case had received in Dade County, the petitioner sought and received a change of venue to Collier County. On April 23, 1968, soon after the transfer to Collier County, petitioner again moved for a change of venue which was granted on August 12, 1968. Thus, the delay of six months immediately after the completion of the first trial can be directly attributed to the efforts of the petitioner to have the venue changed.

After the venue was lodged in Polk County, the case progressed smoothly through pretrial and hearings until the state judge granted petitioner's motion to suppress on December 3, 1968. On December 28, 1968 the respondent appealed the suppression order to the Second District Court of Appeal pursuant to Fla.Stat. § 924.071. The petitioner at the same time filed a cross-appeal. On March 14, 1969, the Second District Court of Appeal reversed the state judge's ruling on the motion to suppress. *State v. Esperti*, 220 So.2d 416 (2d D.C.A. Fla. 1969).

The Florida Statute pursuant to which the respondent appealed the motion to suppress provided for an automatic stay in the trial court. Between December 28, 1968, and March 14, 1969, the state court was without jurisdiction to try the case.

In light of the mandatory stay provisions in Fla.Stat. § 924.071, the state judge on January 19, 1969 continued the trial from February 24, 1969, until such a time "the appeal and the cross-appeal are finally decided." *See* Record at 552. On February 6, 1969, and prior to the decision of the District Court of Appeal, the state court scheduled the trial for April 14, 1969. On August 4, 1969, the state judge set the trial for December 1, 1969. The Court's order setting the trial did not explain or give any indication why the case was not tried during the April, 1969 calendar.

With the exception of petitioner's assertion of his right to speedy trial, and the filing of a few motions, nothing significant occurred between March 14, 1969, and November 21, 1969. On that date, the respondent filed a motion for continuance so that it could appeal the state trial judge's order regarding discovery. A hearing was held on the motion for continuance.[1] On December 3, 1969, the state judge granted the respondent's motion for continuance and delayed the trial of the case until respondent's petition for writ of certiorari had been heard and decided by the District Court of Appeal.[2] On August 5, 1970, the Second District Court of Appeal denied the respondent's petition for writ of certiorari. *State v. Esperti*, 238 So.2d 312 (2d D.C.A. Fla. 1970). This delay, during which the state court was not deprived of jurisdiction, can be attributed solely to the respondent who moved for a continuance.

On October 27, 1970, the petitioner commenced what can be termed a barrage of appellate procedures directed at prohibiting

---

1. The Record indicates that the petitioner raised the question of speedy trial before the state court orally during a hearing on the motion for continuance on November 24, 1969. *See* Record at 669.71. The state judge indicated to petitioner's counsel the availability of depositions of any defense witnesses if there

was a possibility that they might become unavailable. Thus, from at least November 24, 1969, the petitioner should have known that the court would permit the use of depositions to preserve critical testimony.

2. See Record at 664A.

his trial because of the alleged speedy trial violation. Petitioner, on October 27, 1970, filed a suggestion for writ of prohibition with the Second District Court of Appeal. Seven days later the appellate court denied the writ of prohibition. *State ex rel Esperti v. Willson*, 240 So.2d 894 (2d D.C.A. Fla. 1970). On December 3, 1970, the petitioner appealed the District Court of Appeal's denial of the writ of prohibition by filing for a writ of certiorari with the Supreme Court of Florida. On February 8, 1971, the petition was granted and argument was set for April 14, 1971. On July 12, 1971, the petitioner's writ of certiorari was discharged with the Florida Supreme Court finding that there was no conflict jurisdiction to resolve the speedy trial issue. *State ex rel Esperti v. Willson*, 250 So.2d 865 (Fla.1971).

Within a month after the ruling by the Florida Supreme Court, the state trial judge had begun to sign orders acknowledging that the trial would commence on October 11, 1971. A formal notice of trial was signed by the state judge on September 22, 1971. Again on October 10, 1971, one day before the date on which the second trial was to commence, the petitioner filed a petition for writ of certiorari in the Florida Supreme Court. The Florida Supreme Court dismissed the petition on July 5, 1972. *State ex rel Esperti v. Willson*, 265 So.2d 47 (Fla.1972). The record before the Court is not totally clear on this point, but it appears that petitioner never requested a stay or continuance during the entire sequence of appellate proceedings commencing on October 27, 1970. This fact alone is not enough to permit the petitioner to take advantage of additional delay initiated and pursued by him to the end of prohibiting the trial. Therefore, the delay incurred by the petitioner's attempts to seek relief to prohibit the trial will be attributed to the petitioner.

3. *Petitioner's Assertion of the Right to Speedy Trial.* The record in this matter is replete with the petitioner's assertions of his right to speedy trial. On March 17, 1969, October 14, 1969, and March 11, 1970, the petitioner filed written speedy trial demands. On December 12, 1969, November 9, 1970, and October 10, 1971, the petitioner filed written motions to dismiss for failure to accord him his right to a speedy trial. On November 24, 1969, the petitioner orally asserted his right to a speedy trial and on the day the trial commenced the petitioner argued the case should be dismissed for violation of his right to speedy trial. Further, all the proceedings initiated by the petitioner in the Florida appellate system were related to his assertion that his speedy trial rights had been denied.

4. *Alleged Prejudice to the Petitioner.* A brief history of the facts surrounding the murder of Thomas Altamura will place the petitioner's alleged prejudice in the proper perspective.

The facts indicate that Altamura was shot in the head and chest in a restaurant-bar called "A Place for Steak" in Dade County, Florida. The shooting occurred in a vestibule-alcove which was the principal passageway between the main dining room and the bar. Although the vestibule-alcove was in the shape of a semi-circle, it was directly visible from certain points in both the bar and the restaurant. The respondent's principal eye-witnesses, Charles Dore and Forrest Schafer, were either seated or standing at the bar when the shooting occurred and possessed a clear and unobstructed view of the vestibule. Neither Dore nor Schafer witnessed the assailant fire the first shot at Altamura, but both witnessed the subsequent events and identified the petitioner as the assailant. Both witnesses were impeached at both trials to some degree, yet both stood fast in their testimony that the petitioner committed the murder of Altamura.

At the first trial, testimony from two additional witnesses, Mike Sclafani and Audrey Fowler, attest to the fact that the petitioner was present in the bar side of "A Place for Steak" prior to the shooting and that he quickly exited the bar after the shooting occurred. Several police officers testified to the petitioner's behavior when chemical tests were administered to his hands to ascertain whether he had recently fired a handgun. Also in evidence was the testimony of police officer DeSantis who

related that Altamura had ordered the petitioner to get out of town.

John Dunn testified at the petitioner's first trial, but he died in Costa Rica on August 11, 1970, prior to the second trial. Testimony at the evidentiary hearing shows that Dunn possessed an excellent demeanor. Dunn was a United States citizen who was the president of a textile company in Costa Rica. He was visiting in Dade County when the murder occurred because of a board of directors meeting of his company. Dunn entered the restaurant side of "A Place for Steak" approximately an hour to forty-five minutes prior to the shooting. After being seated in a section of the restaurant where he had an unobstructed view into the vestibule-alcove, Dunn ordered a meal and a drink. He testified that he witnessed the assailant approach Altamura in the alcove from Altamura's left, and saw the assailant raise his right hand and shoot Altamura several times in the head and chest. Dunn could not positively identify the assailant, stating that he had seen only his silhouette, but he did testify that at a line-up he thought the assailant was either number two or four. The petitioner was number two in the lineup.

During direct examination of Dunn by counsel for petitioner, he said he was positive that the man he saw do the shooting did not come from the bar.[3] During cross-examination, by respondent, Dunn admitted that he couldn't honestly say where the assailant was coming from.[4] On redirect, Dunn equivocated further as to the place from which the assailant came prior to the shooting, but finally concluded that the assailant came from the door.[5] On recross, Dunn acknowledged that the assailant approached the victim from the victim's left side.

While Dunn testified he constantly referred to a diagram of the floor plan of "A Place for Steak" which was the respondent's Exhibit No. 7, received in evidence.

The record shows these references by use of the term "indicating." On only one occasion did Dunn physically place a mark on the diagram and that was to indicate the location of the assailant at the time the shots were fired. Subsequent to the completion of the first trial, the diagram, Exhibit No. 7, was lost by state court personnel during the various changes of venue. A similar diagram was used at the second trial, but the parties could not stipulate to the location of the Dunn mark so that it could be placed on the second diagram. Also introduced at the second trial were at least seven large photographs depicting the interior of both the restaurant and the bar of "A Place for Steak."[6] Three pictures in particular indicate exactly the view of the assailant and the victim which Dunn could have possessed.[7]

At the second trial, Dunn's prior testimony was read into evidence by the petitioner's two trial counsel. Prior to Dunn's testimony, the state judge instructed the jury in the following manner:

> You will recall that I have advised you that Mr. Dunn is now deceased. This testimony that you will hear was taken at a previous trial. You will give it the same weight also as if the witness was here before you. See Second Transcript at page 1020.

The reading of Dunn's testimony was verbatim except that the word "pointing" was occasionally substituted for the word "indicating", but the trial court did not permit either counsel to physically identify any point on the diagram. In closing argument petitioner's counsel strenuously argued the import of the Dunn testimony.[8]

## CONCLUSIONS OF LAW

1. *Length of Delay.* As a result of the delay between the first and second trials of three years and seven months, serious consideration of the other elements of petition-

---

3. *See* Dunn's testimony page 10 of first trial transcript.

4. *See* Dunn's testimony page 17.

5. *See* Dunn's testimony pages 20–21.

6. See Exhibits Numbered 10, 11, 12, 13, 16, 23, and 24.

7. See Exhibits Numbered 16, 23, and 24.

8. See Second Trial Record at 1084–86.

er's speedy trial claim is warranted. *United States v. Avalos,* 541 F.2d 1100 (5th Cir. 1976), *Gravitt v. United States,* 523 F.2d 1211, and *Arrant v. Wainwright,* 468 F.2d 677 (5th Cir. 1972).

■ 2. *Reasons for the Delay.* In addition to delineating four criteria to be considered in a speedy trial challenge, the Supreme Court in *Barker, supra,* also suggested three specific classifications of reasons for delay to be considered. They are directly related to the culpability of the party causing the delay. Deliberate attempts to delay the trial in order to hamper the defense are weighed heavily against the prosecution. Overcrowded dockets and negligence are to be considered more neutral reasons for delay, but nonetheless attributable to the prosecution. Thirdly, reasons such as a missing witness would serve to justify the delay. *Turner v. Estelle,* 515 F.2d 853, 856 (5th Cir. 1975).

The record in the instant case shows that the majority of the delay incurred was due to either unknown reasons or to neutral reasons. Neither party has alleged or proved that the other party deliberately attempted to delay the trial of the petitioner to gain some tactical advantage or to permit memories to fade. Likewise, neither party has provided the Court with evidence that there are ample reasons which would fully justify the lengthy delay between the two trials.

The reason for the initial six month delay between March 1968, and August, 1968, is clearly attributable to the action of the petitioner in seeking a change of venue. The record indicates that the respondent remained mute as to the petitioner's change of venue request. The case progressed smoothly until the court in December 1968, granted in part the petitioner's motion to suppress. The respondent then filed an appeal with the Second District Court of Appeal seeking the reversal of the trial court's order of suppression. Florida Statute § 924.071, pursuant to which the respondent filed the appeal, granted an automatic stay of the trial of the case until the appellate decision was rendered. Thus, the appeal delay between December 28, 1968, and March 14, 1969, was statutory and thus justified, but the interval between the arrival of the case in Polk County in August, 1968, and the respondent's appeal can be termed a second class delay and attributed to the respondent.

Between March 14, 1969, and November 21, 1969, the record is barren of any rationale for the continuing delay of the trial. On November 21, 1969, the respondent moved for a continuance to seek appellate review of the trial court's ruling on the petitioner's request for discovery. On December 3, 1969, the state court granted the respondent's motion for continuance and delayed the trial of the case until the appellate court could rule on respondent's writ of certiorari. On August 5, 1970, the Second District Court of Appeal denied the respondent's writ of certiorari. Thus, the delay between March 14, 1969, and August 3, 1970, must be attributed to the respondent.

In October, 1970, the petitioner initiated an array of appellate procedures to have the trial prohibited for the preceding delay in trying the petitioner. The petitioner's appellate claims, initiated in October, 1970, were directed to the speedy trial delay between the period March 8, 1968, and the commencement of the barrage of writs of prohibition and certiorari. An analysis of this two year and eight month long period must exclude three months when the state court could not try the case because of the statutory stay and a six month period when the petitioner was seeking a change of venue. The speedy trial delay then attributable to the respondent is reduced to a period of one year and eleven months.

■ The petitioner's appellate efforts, which began October 27, 1970, continued until July 12, 1971, when the Florida Supreme Court discharged the previously granted writ of certiorari. The period between those dates cannot be included in the total amount of time the petitioner was denied trial because it was instituted by the petitioner himself with the specific object of prohibiting the trial. Petitioner did not waive his speedy trial claim by seeking appellate relief prior to trial, but the delay

therefrom does not increase any accrued delay. Thus the delay from October 27, 1970, to July 12, 1971, is attributable to the petitioner.[9] *Torres v. State of Florida*, 477 F.2d 555, 556 (5th Cir. 1973). The Florida Supreme Court discharged petitioner's writ of certiorari on July 12, 1971; his trial commenced on October 11, 1971, that delay was reasonable under the circumstances and is justified. The initiation of the trial process, involving the issuance of subpoenas, the gathering of out of state witnesses, and the clearing of the dockets of both court and counsel, is by its very nature time-consuming.

A summary of the delay incurred indicates that the respondent was responsible for almost two years of delay and that the petitioner was responsible for a little over a year's delay. The remainder of the time can be attributed to justified delay (i. e. mandatory stay) or genuinely justified delay involving the initiation of the trial process.

3. *Petitioner's Assertion of the Right to Speedy Trial.* The record is clear that the petitioner made numerous and timely demands for speedy trial, all coming prior to the initiation of appellate procedures designed to prohibit the trial. There is additional evidence in the form of motions to dismiss and oral requests that petitioner sought to assert a claim of a violation of his speedy trial rights at every appropriate juncture prior to his second trial.

4. *Prejudice to the Petitioner.* In *Barker v. Wingo, supra,* 92 S.Ct. at 2193, the Supreme Court enunciated three classes of prejudice which might arise from a defendant's denial of his right to speedy trial: 1) oppressive pretrial incarceration; 2) anxiety and concern of the accused; and 3) impairment of the defense. The record indicates that the petitioner has been incarcerated continuously since his arrest in Dade County, Florida on October 31, 1967. Although the petitioner has not asserted any special anxiety or concern prior to the

second trial, it is doubtless that one facing a possible death penalty would have to be greatly concerned about the outcome of the trial.

Finally, the Court must examine the critical element of prejudice: whether the defense was impaired. The petitioner asserts that the death of John Dunn and the loss of Exhibit No. 7 prejudiced his right to a fair second trial. There is little doubt but that Dunn's testimony was material and relevant to the issues being tried, and that the second jury was unable to see his favorable demeanor, but Dunn's testimony was not entirely clear or exonerating. In fact, the testimony upon which the petitioner's counsel premised his closing argument was equivocal and varied with the examining party. Dunn was never certain whether the assailant came from the bar, from the door, or from some other location in the restaurant. When asked on cross-examination, "You do not know from where he (the assailant) came, do you?" Dunn responded, "No, I can't honestly say I know from where he came." This assessment changed on re-direct examination. Although Dunn could never positively identify the assailant, his description of the assailant, particularly of his paunch and the testimony of his identification at the line-up, inculpate the petitioner.

Additionally, Dunn's testimony was not of the same quality or clarity as that of the respondent's two principal witnesses who positively identified the petitioner as the assailant. Since the second jury heard Dunn's testimony read, the fact that it could not see him as he testified is not such prejudice as amounts to the denial of a constitutional right.

During the second trial the jurors heard numerous witnesses who explained through their testimony the physical layout of "A Place for Steak." The jurors also saw at least seven photographs of the interior of the restaurant and bar and one extremely

9. This is not to say that the petitioner was precluded from seeking state appellate court relief prior to trial and then later asserting a speedy trial claim after the trial was completed. Both the pretrial appellate remedies initiated

by the petitioner and the post-trial review procedures in this Court are clearly permissible, but the initiation of the former claim cannot be considered as a contributing factor in the latter claim.

large diagram of the entire building. Dunn's testimony, along with all the evidence at the second trial, is clear as to his location in the restaurant, and to his constant references to the fact that the assailant approached the victim from the victim's left. Therefore, the absence at the second trial of the diagram introduced at the first trial was not prejudicial in light of the other diagram, pictures and testimony which were introduced at the second trial.

## SUMMARY

The length of delay between the petitioner's two trials was three years and seven months, but only two years of that time period can be attributed to the actions or inactions of the respondent. The delay incurred was not the result of a deliberate effort of the respondent to hamper the defense.

Under all the circumstances, the petitioner has not established that his defense was impaired or prejudiced, and the Court finds no showing of actual prejudice. Cf. *Hoskins v. Wainwright*, 485 F.2d 1186 (5th Cir. 1973) and *Murray v. Wainwright*, 450 F.2d 465 (5th Cir. 1971).

For the same reasons, petitioner's equal protection claims on both the asserted grounds are without merit. *State v. Glidewell*, 311 So.2d 126 (2d D.C.A. Fla. 1975), *King v. State*, 303 So.2d 389 (3d D.C.A. Fla. 1974), and *State v. DeSantos*, 251 So.2d 289 (3d D.C.A. Fla. 1971).

The Clerk is directed to enter judgment dismissing this case with each party to bear his or its own costs.

DONE AND ORDERED at Tampa, Florida this 16 day of March, 1978.

## APPENDIX A

### CHRONOLOGY OF EVENTS

(a) October 31, 1967—Petitioner surrenders and submits to arrest on a warrant charging him with the crime of first degree murder.

(b) January 16, 1968—Indictment returned by the Dade County Grand Jury charging petitioner with the crime of first degree murder.

(c) March 4, 1968—Trial of the petitioner on the indictment returned.

(d) March 8, 1968—Mistrial declared.

(e) August 12, 1968—Cause removed and venue changed from Dade County, Florida, to Polk County, Florida.

(f) December 28, 1968—Appeal taken by State from order entered by the trial court granting petitioner's motion to suppress.

(g) March 14, 1969—Opinion entered by District Court of Appeal, Second District, reversing trial court's order re petitioner's motion to suppress, *State v. Esperti*, 220 So.2d 416 (1969).

(h) March 17, 1969—Petitioner's *first* written demand for speedy trial.

(i) October 14, 1969—Petitioner's *second* written demand for speedy trial.

(j) November 21, 1969*—Respondent's motion for continuance to appeal court's discovery order.

(k) November 24, 1969*—Hearing on motion for continuance.

(l) December 3, 1969*—Court grants motion for continuance.

(m) December 12, 1969—Motion to dismiss filed by petitioner before the trial court seeking dismissal of the cause for failure to accord him a speedy trial.

(n) December 12, 1969—Petition for common law certiorari timely filed by the State before the District Court of Appeal, Second District, seeking review of trial court's order on discovery.

(o) December 23, 1969—Order entered by trial court denying petitioner's motion to dismiss.

(p) March 11, 1970—Petitioner's *third* written demand for speedy trial.

(q) August 5, 1970—Opinion and decision entered by the District Court of Appeal, Second District, denying State's petition for writ of certiorari, *State v. Esperti*, 238 So.2d 312 (1970).

* These were added by the Court upon review of the record.

(r) August 11, 1970—John Dunn died.

(s) October 27, 1970—Petitioner's first suggestion for writ of prohibition filed before the District Court of Appeal, Second District.

(t) November 3, 1970—Petitioner's suggestion for writ of prohibition denied by the District Court of Appeal, Second District, *State of Florida ex rel Anthony Esperti v. Willson*, 240 So.2d 894 (1970) cert. discharged with opinion, 250 So.2d 865 (Fla. July 12, 1971), with specific chronology to follow.

(u) November 9, 1970—Petitioner's motion to dismiss and for discharge filed before the trial court on the ground of failure to accord petitioner a speedy trial.

(v) November 13, 1970—Order entered by trial court denying petitioner's motion to dismiss and for discharge.

(w) December 3, 1970—Petitioner's *first* petition for writ of certiorari filed in the Supreme Court of Florida; the same being directed to the denial by the District Court of Appeal, Second District, of petitioner's suggestion for writ of prohibition.

(x) February 8, 1971—Petition granted— set for argument April 14, 1971.

(y) July 12, 1971—Petition for writ of certiorari denied by the Supreme Court of Florida, after consideration of record and briefs. *State ex rel Esperti v. Willson*, 250 So.2d 865 (Fla.1971).

(z) October 10, 1971—Petitioner's *second* petition for writ of certiorari filed in the Supreme Court of Florida; the same being directed to the denial by the District Court of Appeal, Second District, of petitioner's suggestion for writ of prohibition.

(aa) October 11, 1971—Jury trial began of petitioner ending October 15, 1971, where guilty verdict of first degree murder was rendered with petitioner receiving a life sentence.

(bb) July 6, 1972—Petition for writ of certiorari dismissed by the Supreme Court of Florida, *State ex rel Esperti v. Willson*, 265 So.2d 47 (Fla.1972).

(cc) March 21, 1973—Judgment affirmed by District Court of Appeal, Second District as reported in *Esperti v. State*, 276 So.2d 58 (2 D.C.A. 1973), reh. den. May 3, 1973, cert. den. 285 So.2d 614 (Fla.1973) reh. den. December 12, 1973.