532 So.2d 992 (1988)
Larry R. FISHER
v.
STATE of Mississippi.
No. 57679.
Supreme Court of Mississippi.
September 14, 1988.
Rehearing Denied November 9, 1988.
*993 William B. Kirksey, Kirksey & Associates, Jackson, for appellant.
*994 Edwin Lloyd Pittman and Mike Moore, Attys. Gen. by Deirdre D. McCrory, Sp. Asst. Atty. Gen., Jackson, for appellee.
En banc.
ANDERSON, Justice, for the court:
This is an appeal from the Circuit Court of Smith County, on change of venue from Lauderdale County, wherein a jury convicted Larry R. Fisher of rape and sentenced him to life imprisonment.
On the night of February 11, 1983, the victim was driving home from her job on Highway 80 going from Meridian to Russell in Lauderdale County. A car appeared behind her and blinked its lights as though to signal her. The victim pulled over; a man walked up to the side of her car and told her that her license plate was coming off. The victim got out of the car to check and found the tag securely fastened to the car. The man then pulled a knife and ordered her to enter the truck. Out of fear, she complied. The man drove a short distance, stopped, taped the victim's hands behind her, removed part of her clothing and raped her. He then took her back to her car and shoved her out. The victim drove home and told her son and his girl-friend what had happened, but she did not notify the authorities because she feared publicity and further humiliation.
During the ensuing months, there were many reports in the Meridian area of a man pulling over lone women at night by blinking his lights. One woman, Carol Formby, disappeared after such an incident, and another young girl Melinda Weathers disappeared and was later found dead near the same stretch of road. In response to public appeals from the police for anyone having knowledge of such activity, the victim finally came forward in May 1983 and reported what happened to her.
Meridian police set up a decoy operation along Highway 80/11 in which an apparently lone police woman would drive through the affected area at night. During one such operation on the early morning of June 4, 1983, policewoman Brenda Hatcher was driving along the highway. To an on-looker she would have appeared alone, but in fact Meridian Detective Bobby House was crouching in the backseat. A pickup truck appeared behind the decoy car and began flashing its lights. Officer Hatcher pulled over, whereupon the defendant Larry Fisher got out of his car and moved towards her. Detective Houser then got out of the car and arrested him. On the next day, the victim identified him as her assailant.
Fisher was indicted for the capital murder of Melinda Weathers and the rape of the victim. In the first Weathers' trial, a Lauderdale jury found Fisher guilty and sentenced him to death. As a result, the Lauderdale County circuit judge continued the present rape trial, in the apparent belief that Fisher's execution would obviate completing it. However, Fisher's conviction and sentence were overturned by this Court. Fisher v. State, 481 So.2d 203 (Miss. 1985). On remand, a change of venue was granted and a Rankin County jury acquitted Fisher of the murder of Melinda Weathers. After this, the trial judge in the present rape case granted a change of venue to Smith County. The trial then proceeded, and Fisher was convicted and sentenced as noted above.
Fisher has placed before us numerous assignments of error, not all of which have sufficient merit to warrant prolonged discussion.

I. WAS FISHER DENIED HIS RIGHT TO A SPEEDY TRIAL?
The victim was raped on February 11, 1983. Larry Fisher was arrested on June 4 of that year and indicted on December 1. It was on June 18, 1984, that the trial judge continued the present case until the completion of the appeals process in the Weathers' case. Fisher's second trial in the Weathers' case resulted in his acquittal on December 13, 1985, whereupon the trial of this case began on January 30, 1986.
There elapsed 790 days between Fisher's indictment and the commencement of this trial. Fisher complains that the delay deprived him of his right to a speedy trial under the United States and Mississippi *995 Constitutions, as well as the Mississippi Speedy Trial statute, Mississippi Code Annotated, Section 99-17-1 (Supp. 1987).

A. CONSTITUTIONAL QUESTIONS.
The Sixth Amendment to the U.S. Constitution states in part that, "in all criminal prosecutions the accused shall enjoy the right to a speedy and public trial... ." Art. 3, Sec. 26, Miss. Const. 1890 offers the same guaranty.
The leading U.S. Supreme Court case on the speedy trial problem is Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). An excellent summary, and application of the Barker balancing test is contained in Beavers v. State, 498 So.2d 788, 790 (Miss. 1986):

Barker enumerates four factors which must be considered: (1) length of delay, (2) reason for the delay, (3) the defendant's assertion of his right to a speedy trial and (4) prejudice resulting to the defendant. No mathematical formula exists according to which the Barker weighing and balancing process must be performed. The weight to be given each factor necessarily turns on the quality of evidence available on each and, in the absence of evidence, identification of the party with the risk of nonpersuasion. In the end, no one factor is dispositive. The totality of the circumstances must be considered.
We will consider all of the Barker factors seriatim.

1. Length of the Delay.
The speedy trial clock begins to tick from the moment the defendant is effectively accused of the offense. Beavers, supra, 498 So.2d at 789; Perry v. State, 419 So.2d 194, 198 (Miss. 1982). In cases not involving a detainer lodged against a defendant already incarcerated, this means the time of indictment. Beavers, id.; Bailey v. State, 463 So.2d 1059, 1062 (Miss. 1985); Perry, supra, 419 So.2d at 198.
In Beavers, this Court held a delay of 423 days would be presumed to be a violation of the speedy trial clause, absent any showing that other Barker factors weigh heavily in favor of the state. Beavers, 498 So.2d at 790. Between Fisher's indictment for the victim's rape and the beginning of the victim's trial, 790 days elapsed. Enough said.

2. Reason for the Delay.
This is often the most important of the Barker factors and this case is no exception. On June 14, 1984, the circuit court, on its own initiative, issued the following order:
ORDER
The Court on its own motion continues the above described cases due to a trial conviction and sentence of the defendant, Larry Fisher, in cause #694-C of the crime of capital murder. It is the court's understanding that said cause # 694-C is on appeal and based on the foregoing facts, the Court in an effort of judicial economy, and fairness to both sides, continues the above described cases until further motions or request of either the defendant or the state.
SO ORDERED AND ADJUDGED, this the 18th day of June, 1984.
Both sides recognize that the lion's share of the delay in this case consists of the 485 days elapsing between the entry of this order and the beginning of the trial in the present case. The mere fact that the defendant is in custody for another crime is generally not a sufficient reason for delaying a trial. E.g. Frankel v. Woodrough, 7 F.2d 796, 799 (8th Cir.1925); U.S. v. Alagia, 17 F.R.D. 15, 17 (D.Del. 1955); Beavers, supra, 498 So.2d at 790; Burgess v. State, 473 So.2d 432, 433-34 (Miss. 1985).
However, there is authority for the proposition that the situation is different where a death sentence is involved. Jamerson v. Estelle, 666 F.2d 241 (5th Cir.1982). Jamerson was indicted for armed robbery in Texas. Before he was tried for this, he was convicted of capital murder in another incident and sentenced to death. Texas held that armed robbery prosecution in abeyance, and the armed robbery trial was not resumed until the U.S. Supreme Court declared the state's death penalty statute *996 unconstitutional in Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Jamerson, not surprisingly, objected that he had been deprived of his right to a speedy trial as to the armed robbery. The Fifth Circuit applied the Barker balancing test. Texas argued that Jamerson's being under a death sentence was a justifiable reason for the post-indictment delay in the armed robbery trial. The Fifth Circuit found this contention "manifestly well founded." Jamerson, 666 F.2d at 243. Texas was justified in choosing "not to expend scarce judicial and prosecutorial resources in trying defendant facing a death sentence, the execution of which would have eliminated the need for any trial at all." 666 F.2d at 244, quoting Turner v. Estelle, 515 F.2d 853, 856 (5th Cir.1975) (cert. den. 424 U.S. 955, 96 S.Ct. 1431, 47 L.Ed.2d 361 (1976).
This applies to the case at bar. The reason for the delay was legitimate, and this weighs heavily in favor of the state.

3. The defendant's assertion of the right.
On the theory that "the more serious the deprivation, the more likely the defendant is to complain" of delays in trial, the Barker court said the failure to assert the right to a speedy trial "will make it difficult for a defendant to prove he was denied a speedy trial." Barker 407 U.S. at 531-32, 92 S.Ct. at 2192-93, 33 L.Ed.2d at 117-18. It is undisputed that Fisher filed no motion asking that his rape case be brought to trial during the pendency of his appeal in the Weathers' case or even between his acquittal and the commencement of the trial. In this context it is significant that the circuit judge's continuance order states the rape case is continued "until further motions or requests of either defendant or the state."
In Beavers we held that while "a defendant has no duty to bring himself to trial" Beavers, 498 So.2d at 791; Nations v. State, 481 So.2d 760, 761 (Miss. 1985), the right to speedy trial is subject to "knowing and intelligent waiver." Thus, Fisher's failure to assert and claim his right would weigh heavily in favor of the state, except for the allegations in his brief that the defense attorneys did not agree with the continuance, were not served with a copy of the order after it was entered, and Fisher himself knew nothing about the continuance. Because the record on this point is unclear as to what Fisher and his counsel knew and when, this factor in the balancing test can be assigned little weight one way or the other.

4. Prejudice to the defendant.
In a remarkable admission, Fisher's brief admits that the delay did not prejudice him (appellant's br. p. 11). However, Fisher argues that the conviction in Beavers was reversed despite a record showing "little evidence of prejudice." Beavers, 498 So.2d at 792. However, in Beavers the court found that there was no adequate reason for the state causing the delay in trial. 498 So.2d at 790-91. Therefore, in the present case the absence of prejudice to the defendant weighs heavily in favor of the state.
In our opinion, the propriety of the state's reasons for delay and the lack of any prejudice against Fisher weigh so heavily in favor of the state as to dispose of the constitutional challenge altogether.

B. THE MISSISSIPPI SPEEDY TRIAL STATUTE.
MCA § 99-17-1 (Supp. 1987), states:
Indictments to be tried within 270 days of arraignment.
Unless good cause be shown, and a continuance duly granted by the court, all offenses for which indictments are presented to the court shall be tried no later than two hundred seventy (270) days after the accused has been arraigned.
Fisher's arraignment occurred 787 days before the trial in the rape case began.
In Nations v. State, 481 So.2d 760, 762 (Miss. 1985), this Court interpreted the speedy trial statute as meaning that a circuit judge's written order of continuance was "the equivalent of a judicial determination that good cause existed" for granting that continuance and therefore, such a continuance *997 would toll the 270-day time limitation.
Nevertheless, Fisher argues that even if the delay was for "good cause", the deduction of the 485 days from the 787 leaves 302 days, still in excess of the time period specified in the speedy trial statute. The state replies that by its terms, the order of continuance was to remain in effect "until further motions or requests of either the defendant or the state." Fisher never made such a motion; the present case was set for retrial on the district attorney's motion filed January 8, 1986. The trial began 22 days later.
We think that because the continuance contained a provision for its own termination by motion, it tolled the statutory period until the motion was made.
In short, we hold that the delay did not contravene the Speedy Trial Statute.

II. WAS FISHER DENIED EFFECTIVE ASSISTANCE OF COUNSEL?
H.C. Watkins was appointed to defend Fisher in both the Weathers' murder trial and the present case. After this Court overturned Fisher's conviction in the Weathers' case, Watkins asked leave of the court to withdraw, which was granted.
At a pre-trial hearing in the present case, Watkins freely admitted that he had concentrated exclusively on the Weathers' case and done no work at all on the current rape charge.
The Sixth Amendment right to a fair trial for criminal defendants includes the right to effective assistance of counsel. E.g., Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). In Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court laid down a two-part test to determine whether or not a criminal defendant had been denied effective assistance of counsel. "First, the defendant must show that counsel's performance was deficient.... Second, the defendant must show the deficient performance prejudiced the defense." 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693. In order to make the requisite showing of prejudice, the defendant must show that there is a reasonable probability that but for counsel's unprofessional errors the result would have been different. 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. Mississippi, of course, applies the Strickland test when the issue is raised in its courts. E.g. Merritt v. State, 517 So.2d 517, (Miss. 1987); Ferguson v. State, 507 So.2d 94 (Miss. 1987); King v. State, 503 So.2d 271 (Miss. 1987).
Fisher argues that Watkins' performance was deficient. Obviously it was since Watkins admitted on the stand that he had done no work whatsoever on the present case before being relieved of it. However, the second prong of the Strickland test,  prejudice to the defendant  cannot be shown as easily. If Watkins, by his omissions, had created a situation so bad that his successor could not repair the damage, we would have little trouble in holding the second element of the Strickland test satisfied. But the record before us does not indicate that Watkins' successor was affected by his predecessor's inaction one way or another. Therefore, we cannot say that Watkins' performance prejudiced Fisher under the terms of Strickland. Accordingly, this assignment of error must fail.

III. SHOULD THERE HAVE BEEN A SECOND CHANGE OF VENUE?
In discussing the effect of extensive and inflammatory news media coverage of Fisher's first trial, this Court held that "venue of this case should have been transferred to a county substantially outside the coverage described above." Fisher v. State, 481 So.2d 203, 223 (Miss. 1985). After venue was changed to Smith County, Fisher moved for a second change of venue, producing affidavits purporting to show that Smith County was still within the coverage of the Meridian news media. In support of the motion, Fisher produced an affidavit from Robert Ward, general manager of WTOK-TV in Meridian, stating that according to the Arbitron Corporation, WTOK had 8% of the viewing audience in Smith County; from Mike Partridge, general manager of WJDQ, a radio station in Meridian, stating that Smith County is *998 within the station's "primary coverage area"; and from Eddie Smith, general manager of WMOX, a radio station in Meridian, also attesting that Smith County is within its regular listening area.
In effect Fisher proposes a syllogism: Larry Fisher cannot receive a fair trial in an area heavily influenced by Meridian media; Smith County is an area heavily influenced by Meridian media; therefore, Larry Fisher cannot receive a fair trial in Smith County.
The decision to grant or deny a motion for a change of venue, of course, is ordinarily for the sound discretion of the trial judge. E.g., Fisher, 481 So.2d at 215; Winters v. State, 473 So.2d 452, 457 (Miss. 1985); Cabello v. State, 471 So.2d 332, 339 (Miss. 1985).
The record fails to disclose any situation remotely resembling the state of affairs we found intolerable in the Weathers' trial. As our first Fisher opinion documented, both the print and broadcast media in Meridian were "saturated" with stories of the highway crimes. Judge Robertson remarked:
The coverage was so extensive that in the proceedings on voir dire, some ten and one half months after Fisher's arrest, every one of the prospective jurors had heard of the case, a fact almost unprecedented in this Court's recent experience.
481 So.2d at 220.
Fisher's showing of the media coverage in Smith County is feeble indeed. He could produce only one television station with a minuscule 8% of the Smith County market, and two radio stations capable of being heard in the county  by how many people no one knows. Obviously, this is poles apart from the kind of coverage to which Fisher was exposed in Meridian. In Smith County, only five members of the venire had heard of the case, and none of those five wound up on the jury panel.
In short, the trial judge did not abuse his discretion.

IV: SHOULD THE TRIAL JUDGE HAVE GRANTED A CONTINUANCE?
After Watkins bowed out of the case as described above, David Stephenson was appointed to represent Fisher on January 6, 1986. The case was set for trial on January 30. Stephenson promptly moved for a continuance, or in the alternative for appointment of additional counsel, an investigator, or both. He cited the length of the record and the close connection of much of the discoverable material to other alleged crimes with the consequent necessity of "sorting out" the evidence. Both motions were denied.
It is hornbook law that the grant or denial of a continuance is within the sound discretion of the trial judge. E.g., Hughey v. State, 512 So.2d 4, 6 (Miss. 1987); Gates v. State, 484 So.2d 1002, 1006 (Miss. 1986); Carter v. State, 473 So.2d 471, 475 (Miss. 1985).
In numerous other cases, this Court has ruled it was not an abuse of discretion to deny continuance even though counsel had had much less time to prepare than the twenty-four days Stephenson had. See e.g., Boyington v. State, 389 So.2d 485 (Miss. 1980) (over the weekend); Shaw v. State, 378 So.2d 631 (Miss. 1979) (8 days); Brown v. State, 252 So.2d 885 (Miss. 1971) (4 days); Garner v. State, 202 Miss. 21, 30 So.2d 413 (1947) (7 days, murder trial).
If the appellant prevails on this assignment of error, it will have been the longest time anyone has had to prepare for trial and yet be entitled to a continuance.
We see no reason to be so prodigal.

V. DID THE TRIAL COURT ERR IN REFUSING TO ORDER THE PREPARATION OF A TRANSCRIPT FROM THE RANKIN COUNTY TRIAL?
Shortly after his appointment, David Stephenson moved that the court authorize the transcription of the court reporter's notes from the Rankin County trial that resulted in Fisher's acquittal. At a hearing on this motion, Stephenson said he needed the transcript so he could use it for impeachment purposes. The trial judge denied *999 the motion, saying the transcript of the first trial in Lauderdale County was available to Stephenson and he could also consult with the lawyers and persons present during the Rankin County trial. Fisher claims that Britt v. North Carolina, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971) required that Fisher, as an indigent, be furnished with a transcript of both the previous trials. Britt involved a defendant who was convicted of murder after his first trial for the same offense had ended in a deadlocked jury. He was denied the transcript from his first trial. The Supreme Court held that this was a violation of his right to equal protection under the Fourteenth Amendment. "There can be no doubt," wrote Justice Marshall for the majority, "that the state must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense on appeal." 404 U.S. at 227, 92 S.Ct. at 433, 30 L.Ed.2d at 403.
Britt and the other cases cited to us all involve the denial of transcripts from prior proceedings in the same case. We do not read them as requiring the state to provide, as a matter of course, transcripts from related cases. It seems to us that in the latter case, the petitioner should be expected to show some specific need or reason for seeking the transcripts. The bare appearance of possible overlap in evidence should not, ordinarily, be enough. The state has a serious obligation to assist an indigent in getting a fair trial but it is under no duty to subsidize fishing expeditions.

VI. DID THE TRIAL COURT ERR BY DENYING A MOTION FOR MISTRIAL AFTER FISHER WAS LED INTO THE COURTROOM IN SHACKLES?
When the trial commenced, Fisher was led into the courtroom wearing leg irons, which were removed as soon as he was seated. The jury were seated in the courtroom at the time, though there was testimony that they could not have seen the shackles. A defense motion for a mistrial was denied.
Our leading case on this question is Rush v. State, 301 So.2d 297 (Miss. 1974). The general principle was stated thus:
It is a common-law right of a person being tried for the commission of a crime to be free from all manner of shackles or bonds, whether of hands or feet, when in court in the presence of the jury, unless in exceptional cases where there is evident danger of his escape or in order to protect others from an attack by the prisoner. Whether that ought to be done is in the discretion of the court, based upon reasonable grounds for apprehension. But, if this right is violated, it may be ground for the reversal of a judgment of conviction.
301 So.2d at 300.
Here again the key word is may. Such an incident can be held harmless, as it was in Rush, where the defendant appeared in handcuffs through an oversight and the cuffs were immediately removed upon objection. 301 So.2d at 300.
Moreover, the defense put on no evidence that any of the venire had actually seen the shackles. States have uniformly held that in the absence of such a showing, a technical violation is harmless. E.g., State v. McMurtrey, 136 Ariz. 93, 664 P.2d 637, 642 (1983); Burger v. State, 245 Ga. 458, 265 S.E.2d 796, 799 (1980); State v. Scott, 323 N.W.2d 790, 792 (Minn. 1982).

VII. DID THE TRIAL COURT ERR IN ALLOWING CIRCUMSTANTIAL EVIDENCE OF OTHER ACTS BY THE DEFENDANT?
In the pretrial stage the trial judge overruled defense motions in limine to prevent the state from introducing evidence of other "flashing light" incidents similar to those allegedly involved in the present crime. During the trial, Marsha Pigott testified that in February 1983 she was driving along U.S. Highway 11/80 when a man flashed his headlights at her. She stopped and pulled over. The man then told her her license plate was falling off, but this turned out not to be true. In court she identified this man as Larry Fisher. On appeal, the defense argues that the admission *1000 of this evidence was improper as constituting evidence of other crimes or wrongful acts not necessary to establish Fisher's activity, since the victim clearly identified him as her assailant. Rule 404(b) of the Miss. Rules of Evidence, in effect at the time of the present case, states:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, or absence of mistake or accident.
The evidence of Fisher's modus operandi was not adduced to identify him, but to show his "plan" for assaulting women. Thus, it was admissible under Rule 404(b).
The other assignments of error lack merit. The judgment and sentence of the circuit court are affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, GRIFFIN and ZUCCARO, JJ., concur.
ROBERTSON, J., dissents.
ROBERTSON, Justice, dissenting:

I.
With respect I suggest that the majority has erred on two points. In my view Larry Fisher's right to a speedy trial, secured by the Sixth and Fourteenth Amendments to the Constitution of the United States, has been violated. Second, Fisher's right to a state-provided transcript of his trial on a different charge was erroneously denied.

II.
The majority's discussion on the speedy trial issue is a classic illustration of how a court can recite the law relatively correctly but then err substantially in its application. No one doubts that the ground rules for speedy trial litigation emanate from the familiar balancing test announced in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Barker enumerates four factors which must be considered: (1) length of delay, (2) reason for the delay, (3) defendant's assertion of his right to a speedy trial, and (4) prejudice resulting to the defendant. The majority's recitation of these is unexceptionable. I will go straight to the four points.

A. Length Of The Delay

Critical here is identifying the point in time when the speedy trial clock begins to tick against the prosecution. The majority is confusing on this point. The opinion first states that time begins to run from the moment the defendant is effectively accused of the offense, citing Beavers v. State, 498 So.2d 788, 789 (Miss. 1986), and Perry v. State, 419 So.2d 194, 198 (Miss. 1982). Generally, this is correct, and we have three other cases saying essentially the same thing. Williamson v. State, 512 So.2d 868, 876 (Miss. 1987); Lightsey v. State, 493 So.2d 375, 378 (Miss. 1986); Burgess v. State, 473 So.2d 432, 433 (Miss. 1985). The majority then says, confusingly, that "in cases not involving a detainer lodged against the defendant already incarcerated, this means the time of indictment," citing Beavers, Perry and Bailey v. State, 463 So.2d 1059 (Miss. 1985), none of which say any such thing. That notion applies to cases where the accused is already in custody on other charges and where indictment in fact is the first time the accused is charged with the new offense. In such situations when a new charge is lodged, then it is only sensible that the right to a speedy trial begins to run when the new detainer is lodged or indictment is returned.[1]
In Beavers we said:
One's right to a speedy trial as a matter of common sense has reference to that point in time when the prosecution may begin to crank up the machinery of the criminal justice process.
498 So.2d at 790.
In the case at bar, Fisher was arrested on June 4, 1983. A combined reading of *1001 the record in this case and Fisher's prior trial makes clear that law enforcement authorities regarded Fisher a suspect in the Rivers rape case on that date. A few days later formal rape charges were levied against Fisher.
In this context, the chronology becomes important.

 DATE ACTION
February 11, 1983 Rape committed
June 4, 1983 Larry Fisher arrested
April 20, 1984 Fisher's conviction of
 the capital murder of
 Melinda Gail Weathers
October 16, 1985 Fisher's conviction
 and death sentence reversed
 and remanded.
 See Fisher v. State,
 481 So.2d 203 (Miss.
 1985).
January 30, 1986 Rape trial begins

This chronology reflects that 970 days elapsed from the date of Fisher's arrest until the date of his trial.
To put the matter in context, in Beavers, where we reversed, the delay was 423 days after arrest. In Bailey, where we also reversed, the delay was only 290 days, or almost ten months. In Perry, where we reversed, the delay was nineteen months, or 566 days.
In sum, I do not see how it can be doubted that the length of delay factor weighs enormously in Fisher's favor.

B. Reason For The Delay

The only reason offered for the delay was that Fisher was tried and convicted of capital murder and sentenced to death on an unrelated charge and that the State was not required to expend its prosecutorial resources in bringing a man to trial who was already under a death sentence. Even assuming that this argument has legal force and effect, it falls apart upon examination of the facts of this case. Fisher was convicted of capital murder and sentenced to die on April 30, 1984. That conviction was reversed in this Court and that case remanded for a new trial on October 16, 1985. That time period is some 544 days. Again, assuming arguendo, that the excuse the prosecution offers has legitimacy, that excuse is limited to but 544 days delay. When that number of days is subtracted from the total number of days delay, we still have 427 days unexplained and unjustified. As noted above, we reversed in Beavers where the delay was 423 days and in Bailey where the delay was only 290 days. The prosecution's asserted reason for the delay thus seen profits it little.

C. Fisher's Assertion Of His Right To A Speedy Trial

An understanding of the burdens imposed by the law is essential to evaluation of this factor. The burden for bringing a defendant to trial in a timely manner rests with the prosecution. Perry v. State, 419 So.2d 194, 199 (Miss. 1982). See also Barker v. Wingo, 407 U.S. 514, 527-29, 92 S.Ct. 2182, 2190-91, 33 L.Ed.2d 101, 115-16 (1972). This is a corollary of our oft-stated proposition that a defendant has no obligation to bring himself to trial. See Williamson v. State, 512 So.2d 868, 877 (Miss. 1987); Beavers v. State, 498 So.2d 788, 791 (Miss. 1986); Nations v. State, 481 So.2d 760, 761 (Miss. 1985); Turner v. State, 383 So.2d 489, 491 (Miss. 1980).
The majority opinion asserts that Fisher at no time asserted his right to a speedy trial and implies a waiver and in the end holds that
this factor in the balancing test can be assigned little weight one way or the other.
I disagree. In the first place, though he filed no formal motion demanding a speedy trial, Fisher wrote letters from Parchman during the time that he was on death row demanding a speedy trial on the present charge. Moreover, in view of the State's burden and Fisher's lack of burden, a silent record on this point should at the very least be construed as a slight factor in favor of Fisher.

D. Prejudice To The Defendant

Common sense suggests that prejudice to Fisher from the delay was enormous. I say this in the context of the fact that the outcome determinative testimony at trial was the victim's in-court identification of Fisher as her assailant.
*1002 The facts are quite simple. The rape occurred on February 11, 1983. The victim's in-court identification testimony occurred on January 30, 1986  some 1,083 days later. Add in the fact that in the spring of 1983 the victim had in fact identified another person as her assailant, thus casting great doubt upon her ability to identify Fisher.
It requires little familiarity with the facts and circumstances of the two Larry Fisher cases which have been before us to realize that the victim's in-court identification of Fisher in January of 1986 is highly suspect. The enormous delay between the time of the offense and the in-court identification, coupled with the victim's previous identification of another person as her assailant at a point in time far far closer to the crime can only lead to the conclusion that the prejudice to Fisher from this delay was great.
Considering the Barker factors in summary, we find that the length of delay weighs heavily in Fisher's favor. The reason for delay and the prejudice factors weigh heavily in Fisher's favor. Fisher should be given the benefit of the doubt on the assertion of right factor because of the burden upon the State to bring him to trial promptly. The reason for delay only slightly ameliorates the weight of these other factors.
I would hold that Fisher's right to a speedy trial secured by the Sixth and Fourteenth Amendments to the Constitution of the United States has been abridged.

III.
On December 13, 1985, Larry Fisher was tried and acquitted of the capital murder of Melinda Gail Weathers. The prosecution promptly resurrected the present rape charges, changed venue to Smith County, appointed new counsel wholly unfamiliar with the extensive prior proceedings, and set the case for trial on January 30, 1986.
In this context new counsel moved for a transcript  at the state's expense  of the trial at which Fisher had been acquitted. The motion recited:
3. At the defendant's upcoming trial, the State has indicated that it will call many of the same witnesses that testified at the defendant's previous trial, and that the subject matter of their testimony will be similar, if not identical to that which they testified in previous trials. These persons include:
(a) Pat Rivers, the prosecutrix [sic];
(b) members of the so-called "Decoy Team";
(c) employees of the State Crime Lab;
(d) Marsha Piggott;
(e) Nelson Hall and several of his employees; and
(f) members of the Lauderdale County Sheriff's Department.
4. Much of the evidence that the State intends to introduce in this case was obtained as a result of the investigation of the charge for which the defendant was tried in Rankin County, and that evidence was either introduced in that trial or suppressed by order of this Court.
I do not think it would be questioned, had the instant case been a retrial on the capital murder charges, the denial of Fisher's motion for a transcript of the previous case would have been reversible error. I say this by reason of Britt v. North Carolina, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971). In Britt, the Supreme Court reiterated the principle that "[T]he State must provide an indigent defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal." The two factors used in determining need are
1. the value of the transcript to the defendant in connection with the appeal or trial for which it is sought, and
2. the availability of alternative devices that would fulfill the same functions as a transcript.
404 U.S. at 227, 92 S.Ct. at 434, 30 L.Ed.2d at 403-04.
"[E]ven in the absence of specific allegations," the Court continues, "it can ordinarily be assumed that a transcript of a prior mistrial would be valuable to a defendant in at least two ways: as a discovery device in preparation for trial, and *1003 as a tool at the trial itself for the impeachment of prosecution witnesses." 404 U.S. at 228, 92 S.Ct. at 434.
In the instant case, Fisher has articulated well the value of the transcript sought, and the State has not suggested other alternatives. See Britt, 404 U.S. at 230, 92 S.Ct. at 435, 30 L.Ed.2d at 405 ("a defendant who claims a right to a free transcript does not, under our cases, bear the burden of proving inadequate such alternatives as may be suggested by the State or conjured up by the court in hindsight.") Unlike Britt, however, this case does not involve a retrial of the same charge. Still the rape charge before us today is intricately linked to the previous one in which Fisher was acquitted. The critical facts and circumstances regarding Fisher's arrest and the investigation that followed are identical. On top of this it cannot be overemphasized that new counsel had been thrust into a case which, to say the least, had an extensive and complex history.
In Martin v. Rose, 525 F.2d 111 (6th Cir.1975), the Sixth Circuit found that the failure of the Sixth Circuit to provide the accused, who was tried for a bank robbery and who had been previously acquitted in federal court for the same offense with a transcript of the federal court trial, was error of constitutional magnitude.
The defendant was entitled to a free transcript of the competency hearing of the state's primary witness in State v. Cofske, 129 N.H. 133, 523 A.2d 102 (1987). "The defendant alleged in his motion that the transcript of the competency hearing would enable him to identify specific instances of inconsistency in the victim's testimony. Under such circumstances, the failure of the trial court to grant such a motion constitutes reversible error." Cofske, 523 A.2d at 104.
In the case at bar, Fisher clearly articulated specific and compelling reasons for needing a transcript of the Rankin County trial. Our familiarity with the prior course of proceeding against Fisher should remove any doubt of the legitimacy of these reasons. At least portions of the transcript should have been made available to him as a basic tool of an adequate defense. See Britt, supra, 404 U.S. at 227, 92 S.Ct. at 433, 30 L.Ed.2d at 403. Therefore, the denial of the motion constituted reversible error.
I respectfully dissent.
NOTES
[1] Livingston v. State, 525 So.2d 1300, 1304-05 (Miss. 1988) also suggests that the right to speedy trial attaches at indictment. Livingston is clearly wrong.