I concur in today's judgment and am *Page 1391 
reluctant to write again[1] on the subject of speedy trial, though there is much near the end of the Court's opinion I find disquieting, if not downright indefensible. Beyond this, Justice Sullivan has written, pinpointing today's twin departures from our past jurisprudence: (1) saddling the accused with a heavy burden to demand a speedy trial on pain of waiver, and (2) tying constitutional analysis to our statutory 270-day rule case law, which, of course, puts the cart before the horse. I agree with what Justice Sullivan says, join his opinion, and will try not to be repetitious.
Today's is another successful battle in this Court's increasingly successful war against the right to a speedy trial. This and other recent cases convince me the Court is determined to find a way to finesse all but the clearest speedy trial claims. The majority fails to see language like today's serves but to exacerbate the problem of criminal justice delay without measurable compensating gains. The people at large have an interest in prompt criminal prosecutions. That the people's interest is not reflected in a constitutional right does not preclude the courts regarding it. There certainly is no legal preclusion.
Every rule of law incites behavior. The reason we have law is to curb conduct thought undesirable and that we doubt we can curb without it. We have and enforce other laws to afford incentives to that which makes social life on the whole more tolerable. How well law serves us is a function of the intelligence of our judicial stewardship. Because we are fallible, we do not always effect what we desire. We look out the window but here, as so often, we fail to see without passion or prejudice.
The end immediately at issue is prompt disposition of criminal charges, a consummation devoutly to be wished by the public at large as well as the (innocent) accused, as Barker says as well as any case I know. Barker v. Wingo, 407 U.S. 514, 519-20, 92 S.Ct. 2182, 2186-87, 33 L.Ed.2d 101, 110-11 (1972). Our war on the Sixth Amendment does not serve well that end, and why this is so should be apparent. Trial judges and prosecutors, no less than (would-be) offenders respond to law's deterrent. "A rule that is not enforced is no rule." Box v. State, 437 So.2d 19, 21 (Miss. 1983). Infinitely more important, a rule that is not enforced will not be followed, and the behavior it ought deter will continue.
Delay is rampant in our criminal justice system, and if we start enforcing the Sixth Amendment (not to mention our own Constitution) and do so firmly and consistently, it just might stop, but it certainly will not stop until then. Instead, in footnote 6 the majority takes a broadside swipe at those who would assert speedy trial claims. The Court sends signals that it considers such claims a nuisance, and looks upon them with distaste. When we say so firmly we will find a way to avoid reversing on speedy trial claims, we tell our trial courts and our prosecuting attorneys that they may relax their Sixth Amendment diligence. So long as they avoid the statute-of-limitations-like 270-day rule, they have nothing to fear. We forget our recent experience in the area of criminal discovery. It took a few reversals in cases of clearly guilty criminals and a few missteps in rule and reasoning, but few today would deny it was worth it. We have substantially enhanced the fairness of criminal trials through full and free discovery, without discernible adverse impact upon our ability to convict the guilty. What the Court fails to understand is that it may well win the war against the right to a speedy trial, but with the consequence that everybody loses. For this is one instance where constitutional imperative and the public interest completely coincide.
If there were a compensating gain I might pause. The only laudable gain one might consider is that, through our persistent rebuff of speedy trial claims, fewer *Page 1392 
criminals will go free, and the general deterrent capacity of the criminal law will be enhanced accordingly. But the distance from denial of speedy trial claims to a lowered crime rate is great. Any incentives diffuse and dissipate well short of their mark. The gain is thus seen ephemeral. On the other hand, five years unflinching enforcement of speedy trial rights and a steady course thereafter will as surely as the night follows the day produce prompt prosecutions, presuming, of course, the public wants prompt prosecutions enough to pay the piper.
I concede the delays at the appellate level are intolerable as well and that, in a sense, any complaint here at delay at the trial level bespeaks of the pot calling the kettle black. But there is one fundamental difference. The defendant on appeal has been shorn of his presumption of innocence. The convicted defendant has either begun serving his time or has provided costly security assuring the public that he will surrender upon affirmance.
There is a more legalistic point. An accused has no duty to bring himself to trial. Barker v. Wingo, 407 U.S. at 527, 92 S.Ct. at 2190, 33 L.Ed.2d at 115. We have repeatedly accepted this premise. See, e.g., State v. Ferguson, 576 So.2d 1252, 1255 (Miss. 1991); Flores v. State, 574 So.2d 1314, 1318 (Miss. 1990); Jaco v. State, 574 So.2d 625, 632 (Miss. 1990); Vickeryv. State, 535 So.2d 1371, 1377 (Miss. 1988); Williamson v.State, 512 So.2d 868, 877 (1987); Fisher v. State,532 So.2d 992, 996 (Miss. 1988); Reed v. State, 506 So.2d 277, 281 (Miss. 1987); Nations v. State, 481 So.2d 760, 761 (Miss. 1985);Turner v. State, 383 So.2d 489, 491 (Miss. 1980). Today's majority repeats the words and, as well, Barker's admonition that the right to a speedy trial is not lost by silence, Barkerv. Wingo, 407 U.S. at 526-527, 92 S.Ct. at 2189-90, 33 L.Ed.2d at 114, though a moment later they vanish like the wind.
Candor requires concession that today's is hardly our first speedy trial case where we give lip service to these ideas and then promptly ignore them. Today we weigh Spencer's failure to assert the right until the day before trial "heavily against" him. But this is not the way rights work. We would never say an accused's failure to take the witness stand at trial weighs heavily against him, and, indeed, if the defendant wishes, he may have instruction to the contrary. Incident to a plea bargain, we do not presume from a silent record waiver of the right to counsel, the right to trial by jury, nor the right to confront witnesses. See Boykin v. Alabama, 395 U.S. 238, 242-44, 89 S.Ct. 1709, 1711-12, 23 L.Ed.2d 274, 279-80 (1969), followed and respected in this state in cases from Phillips v. State,421 So.2d 476, 479 (Miss. 1982), down through most recently Hortonv. State, 584 So.2d 764, 767 (Miss. 1991). Barker says all of this much better than I am saying it. Barker, 407 U.S. at 526-27, 92 S.Ct. at 2189-90, 33 L.Ed.2d at 114-115.
I join in affirmance because I think on today's facts the Circuit Court sensitively assessed the Barker factors and held the accused had suffered no loss of his rights. State v.Ferguson, 576 So.2d 1252, 1255 (Miss. 1991). I find little in the majority opinion to fuss about until we reach the bottom of Section III, page 1388, when in complete contradiction of what has been said before, the Court says, "The third Barker factor weighs heavily against Spencer." What follows thereafter is but symptomatic of what we see so often, that we are ready and willing to respect those rights of the criminally accused that are seldom violated, where waivers are easily obtained, or that otherwise infrequently inconvenience us. When we follow this course, we invariably produce greater public inconvenience, for there are none so blind as those who will not see.
[1] See, e.g., Adams v. State, 583 So.2d 165, 170 (Miss. 1991) (Robertson, J., dissenting); Kinzey v. State,498 So.2d 814, 819 (Miss. 1986) (Robertson, J., dissenting).